FIREMEN'S FUND INS. CO. v. TROJAN POWDER CO.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1918.)

No. 3037.

1. INSURANCE ⊙⟶488 — MARINE INSURANCE — LIABILITY FOR FORWARDING CHARGES.

Where the contract of affreightment authorized the carrier in case of stranding to forward by another ship, and charge extra compensation therefor, which contingency happened, the cargo insurer, which, although exempted from particular average, contracted to pay special forwarding charges for which it would otherwise be liable, *held* liable for the extra cost of forwarding.

2. SHIPPING ⊙⟶112 — DISABILITY OF SHIP — AUTHORITY TO FORWARD CARGO.

Under the law of England, where a ship is damaged on the voyage and cannot be repaired without a very great loss of time, the master or the shipper may procure another ship to carry her cargo to place of destination.

3. INSURANCE ⊙⟶488 — MARINE INSURANCE — "PARTICULAR CHARGE."

By the law and custom of England, when in consequence of a peril insured against the voyage cannot be accomplished in the original ship, the cargo underwriter is liable for the excess expense of forwarding by another vessel as a "particular charge."

4. INSURANCE ⊙⟶488 — MARINE INSURANCE — CONSTRUCTION OF POLICY.

A clause of a marine cargo policy, "Freight warranted free from any claim consequent upon loss of time, whether arising from peril of the sea or otherwise," does not apply to excess freight paid for forwarding on stranding of the ship, for which the insurer is otherwise liable.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action at law by the Trojan Powder Company against the Firemen's Fund Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was brought upon a policy of marine insurance issued upon 6,000 cases of explosives shipped by the plaintiff in the action, defendant in error here, by the steamer Pleiades, of the California Atlantic Steamship Company, from San Francisco to Balboa, Isthmus of Panama, under a contract of carriage which provided that the freight, whether prepaid or to be collected, was to be considered as earned, vessel or goods lost, or not lost, at any stage of the transit, and that, on the happening of any of the contingencies mentioned in the contract of shipment, the carrier was to have the right to forward the freight to the port of destination on its own ship, and should receive extra compensation therefor, whether performed by its own vessels or those of others, among which contingencies were stranding, straining, and any accidents or perils of the sea. The plaintiff prepaid the freight, amounting to $1,950, and the Pleiades left San Francisco on her voyage with the explosives on board, but was stranded off the coast of Mexico on the 16th of August, 1912, and was then and there, together with her cargo, in danger of becoming a total loss. The plaintiff then undertook to abandon the said goods, which abandonment the defendant insurer refused to accept. The ship was subsequently floated, but because of her damaged condition was unable to proceed upon her voyage, and was taken back to San Francisco for repairs, where her cargo, including the insured explosives, was discharged into lighters. The repairs on the vessel were not completed until December 27, 1912. The explosives so shipped and insured had been sold to the Panama Canal Commission for use in the building of the

canal, with the right on the part of the commission to refuse to receive the shipment if it did not arrive within a fixed time, and, there being no other market at that place, it was therefore important for the shipper to get the explosives to their destination.    To do so it was compelled to, and did, on October 15, 1912, reship the said goods on another steamer of the same carrier, called Mackinaw, for which transportation it was compelled to and did pay to the steamship company additional freight in the sum of $4,050, for which latter sum the plaintiff brought the present action against the present plaintiff in error, the latter having refused payment on demand.

The insurance was in the sum of $35,000 upon the explosives laden on board the Pleiades for the voyage first mentioned, and it was expressly agreed that the insurance should commence at the time the goods should be laden on board the ship and continue until safely landed at Balboa.    The policy also contained the usual "sue and labor" clause, and these further provisions:  "And touching the adventures and perils which the said company is content to bear and does take upon itself in the voyage so insured as aforesaid, they are of the seas,  *  *  *  restraints and detainments of all kings, princes, and people, of what nation, condition, or quality soever,  *  *  *  and of all other perils, losses, and misfortunes that have or shall come to the hurt, detriment, or damage of the aforesaid subject-matter of this insurance or any part thereof.  *  *  *  General average payable as per foreign statement or per York-Antwerp Rules of 1890, if in accordance with the contract of affreightment.  *  *  *  It is hereby agreed that the rights of assured shall not be prejudiced by the insertion in the bill of lading of the London Conference Rules of Affreightment 1893, or of the following clause:  'The act of God, perils of the sea,  *  *  *  restraint of princes, rulers, and people, collisions, stranding, and other accidents of navigation excepted, even when occasioned by the negligence, default, or error in judgment of the pilot, master mariners, or other servants of the shipowners.' Warranted free from average unless general, or the ship or craft be stranded, sunk, or burnt, each craft or lighter being deemed a separate insurance.    Underwriters, notwithstanding this warranty, to pay for  *  *  *  any special charges for warehouse rent, reshipping, or forwarding for which they would otherwise be liable.  *  *  *  All questions of liability arising under this policy are to be governed by the laws and customs of England.  *  *  * Freight warranted free from any claim consequent upon loss of time, whether arising from a peril of the sea or otherwise.  *  *  *"

McCutchen, Olney & Willard, Edward J. McCutchen, and Ira A. Campbell, all of San Francisco, Cal., for plaintiff in error.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above).    [1] It is obvious that the contract of affreightment evidenced by the bill of lading lay at the foundation of the insurance, the liability of the insurer to be governed by the laws and customs of England.    It is conceded by the defendant in error that its recovery cannot be sustained on the "sue and labor" clause of the policy, since the reshipment freight charge for which the suit was brought was not paid by it in order to prevent the explosives insured from being lost by reason of any impending peril; but its contention is that in consequence of a peril insured against, that is to say, the stranding of the ship, the voyage insured was threatened with frustration, and the expense of reshipping the explosives was incurred to prevent such frustration. That the Pleiades was stranded, and the completion of her voyage thereby rendered impossible, is not questioned; nor is the further fact

that the necessary repairs upon her were not completed until December 27, 1912—nearly four months subsequent to the interruption of the voyage insured.

[2] Neither by the law of England, as we understand it, nor by the contract of the parties, was the shipper obliged to wait for such a length of time before seeking to get its explosives to their destination. Respecting the law, the complaint in the case alleges, and the answer thereto admits, that it is the law of England that if, by reason of damage to the ship, she cannot be repaired without a very great loss of time, the master is at liberty to procure another ship to transport her cargo to the place of destination; and by the contract of shipment in the instant case the carrier was given the right to forward the explosives to their destination, either by one of its own vessels or that of another, together with the right to receive extra compensation therefor. That this contract carrier did so forward this freight by another of its own ships on October 15, 1912, and demand and receive from the plaintiff in the case additional compensation therefor in the sum of $4,050, for which the latter recovered judgment in the court below, is also a fact clearly shown by the record, and is, indeed, undisputed.

[3] As has already been said, it is conceded that the plaintiff was not entitled to recover under the "sue and labor" clause of the policy, and for the reason that has been stated. But we understand the reshipment charge in such a case as the present to be recoverable from the insurer, both by the established law as well as the established custom of England, as a "particular charge," as distinguished from a "particular average"; for in Arnould on Marine Insurance (8th Ed.) § 869, vol. 2, it is said:

"Another class of losses, which, though not specially enumerated in the policy, are nevertheless recoverable thereunder, is that which is embraced under the term 'particular charges.' The distinction between 'particular charges' and 'particular average' was first definitely established in our courts in Kidston v. Empire Insurance Co. [k], where the jury, after hearing the evidence of several average adjusters and other witnesses, found that there was in the business of marine insurance a well-known and definite meaning affixed by long usage to the term 'particular average,' as distinguished from the term 'particular charges'—viz., that 'particular average' denotes actual damage done to or loss of part of the subject-matter of insurance, but that it does not include any expenses or charges incurred in recovering or preserving the subject-matter of insurance, and that expenses incurred in warehousing and forwarding goods are not 'particular average,' but are termed 'particular charges.' Accordingly section 64, subsection 2, of the Marine Insurance Act states that 'expenses incurred by or on behalf of the assured for the safety or preservation of the subject-matter insured, other than general average and salvage charges, are called particular charges. Particular charges are not included in particular average' [l]. They are recoverable from underwriters when incurred after the arising of a peril insured against, in order to prevent such peril causing a loss for which the underwriters would be liable, if it were so caused. In this event they are charges incurred 'in and about the defense and safeguard' of the subject-matter of insurance, within the suing and laboring clause. In certain cases they may also be recoverable from underwriters, apart from the suing and laboring clause, as losses occasioned by a peril insured against when they have been necessarily incurred in consequence of such a peril—as, for example, expenses of warehousing and forwarding cargo [m], when a peril insured against has occasioned the neces-

sity of such expenditure [n]"—the small letters in brackets referring to notes citing the cases referred to by the author.

Again, in section 214, vol. 1, 8th Ed., of the same author, it is said:

"When, in consequence of a peril insured against, the voyage cannot be accomplished in the original ship, it seems that the excess of the expense to which the owner of the goods is put in bringing them to their destination over the freight which he would have had to pay in the ordinary course is a loss directly due to such peril. The practice of underwriters has been to pay such excess as particular charges [e], and as one of the objects of an insurance on goods is to guarantee that the goods shall reach their destination, it is submitted that this practice is correct in principle [f]. It is certainly not inconsistent with the provisions of the Marine Insurance Act [g]."

It thus appears not only that, both by the law as well as the prevailing custom of England, the underwriter in such a case as we have here is required to pay, as a "particular charge," the excess of expense to which the owner of the goods was put in order to get them to their destination, but we have the further declaration of the distinguished author that the practice is correct in principle and in no wise inconsistent with the provisions of the English Marine Insurance Act.

Counsel for the plaintiff in error refer particularly to section 64 of the latter act and conclude therefrom that "particular charges partake of the nature of recoveries under the 'sue and labor'" clause, and are subject to the rule that governs claims under that clause. We do not so understand the law. It is true that by the express declaration of the English statute particular charges are not included in particular average. The language of the section cited is as follows:

"(1) A particular average loss is a partial loss of the subject-matter insured, caused by a peril insured against, and which is not a general average loss.

"(2) Expenses incurred by or on behalf of the assured for the safety or preservation of the subject-matter insured, other than general average and salvage charges, are called particular charges. Particular charges are not included in particular average."

We are unable to see from this that any inference should be drawn, as contended for the plaintiff in error, that particular charges should be likened to claims under the ordinary "sue and labor" clause, to sustain which it is necessary to show that the recovery sought was expended in order to prevent the insured property from being lost by reason of an impending peril insured against, and which "sue and labor" clause was expressly inserted in the policy in suit. On the contrary, Mr. Arnould, as has been shown, lays it down not only as the law but also the custom of England that particular charges include "another class of losses, which, though not specially enumerated in the policy, are nevertheless recoverable thereunder" when, as in the present case, the loss was occasioned by a peril insured against and when necessarily incurred in consequence of such peril.

The cases particularly relied upon by counsel for the plaintiff in error in support of their contention are Great Indian Peninsular Ry. Co. v. Saunders, 101 English C. L. R. 41, and Booth v. Gair, 15 Com. Bench Reps. (N. S.) 290, and they say that in the former the policy involved was practically identical with the policy involved in

the present case. In that statement we think counsel clearly in error. In that case certain rails were shipped by the plaintiff by the ship Bombay on a voyage to Kurrachee or Bombay, for a certain sum paid in advance, ship lost or not lost—the plaintiffs having insured themselves by a policy in the ordinary form of a Lombard Street policy on the rails, "valued at £4500, warranted free from particular average, unless the ship be stranded, sunk, or burnt." The ship was by perils of the seas disabled, and obliged to put into Plymouth, England, in such a state that she was not worth repairing; but she was neither stranded, sunk, nor burnt. The rails were saved and were sent on other vessels to their destination, and in order to forward them to their destination it was necessary to pay freight to the extent of £825. 11s. 7d. The latter, the court said, "was an extra expense incurred by the shippers of the goods in consequence of the sea risk which had frustrated the voyage of the Bombay; and the question we have to determine is whether the insured can recover this sum on a policy containing" the warranty that has been mentioned. The court held that the warranty in that case was equivalent to a stipulation against total loss and general average only, and consequently included expenses incurred in relation to the goods, and further held that the expenses there paid by the owner for the purpose of forwarding the rails to their destination at a time when they were not in any peril of total loss, either actual or constructive, were not recoverable under the "sue and labor" clause which the policy there involved also contained.

That case was followed by Booth v. Gair, in which bacon was insured upon a voyage from Liverpool to New York, "free from average unless general, or the ship were stranded, sunk, or burnt." The vessel on her way, by perils of the sea, but without being stranded, sunk, or burnt, became disabled and put into Bermuda, where she was constructively totally lost. The bacon was landed in specie and was not totally lost, constructively or otherwise. No expenses appeared to have been incurred in saving the goods from a total loss, which was negative; but certain expenses were incurred in the way of extra freight, transshipment, warehousing, surveying, and cooperage, all of which were treated as expenses of forwarding the goods. It was in that case further proved that it was the practice of underwriters on goods to pay such expenses under like circumstances under the name of particular charges. The judgment was for the underwriters upon the ground that what the master did was in discharge of his duty in ordinary course, and that there was no peril creating a risk of a total loss from which the underwriter was saved by the expenses there in question.

What is above said regarding the cases of Great Indian Peninsular Railway Co. v. Saunders and Booth v. Gair is substantially taken from the opinion in the subsequent case of Kidston v. Empire Marine Ins. Co., L. R. I. C. P. 535 (14 Eng. Rul. Cases, 247), which latter case was an action upon a policy on charter freight, which included the usual suing and laboring clause, and the following warranty:

"Warranted free from particular average, also from jettison, unless the ship be stranded, sunk, or burnt."

The cargo was guano, at a freight payable on arrival at the port of discharge, shipped from the Chincha Islands to the United Kingdom, by a vessel which, on going around Cape Horn, suffered damage so serious that she had to put into Rio, and was accordingly sold. The plaintiffs in the action gave no notice of abandonment, but, the guano having been landed and warehoused at Rio, the master procured another vessel to carry it to Bristol for an agreed price, which the plaintiff paid, receiving from the owners of the cargo the full charter freight. The master also incurred certain expenses for landing, warehousing, and reloading the guano at Rio. The action was brought to recover the expenses of transshipment and forwarding. In holding that the plaintiffs were entitled to recover, under the suing and laboring clause of the policy, the expenses so incurred and the freight, notwithstanding there had been no abandonment, and that the application of the suing and laboring clause was not excluded by the warranty against particular average, the court said, among other things:

"The word 'average,' so far from being a term of art (except in so far as according to the evidence usage may have limited its meaning to loss or damage to the goods themselves), or a word with a rigid or unchanging signification necessarily including expenses in the defense or safeguard of the subject-matter insured, is a word used in a great variety of phrases as applicable to different subjects-matter, and not with any fixed or settled application. It would be tedious to go through the various uses to which it is applied; and we need not do more than refer to the instances cited in argument, and more especially to the very learned note of Mr. Maclachlan in Arnould on Insurance (3d Ed., vol. 2, p. 739). Amongst the various uses to which the word has been applied, no doubt, that of 'small expenses' is one, as in the usual clause in a charter party. So, in the case of insurance itself, expenses must often be taken into account in determining whether there has been a loss or not, but only because a thing is lost in insurance law which cannot be got back, except at an expense equal to its value when recovered. The question here, however, is not as to the extension of which the term 'average' is capable, but of the sense in which it ought to be understood in the particular context with which it is to be reconciled, and if possible read so that effect may be given to every provision in the instrument. Nor is it to be forgotten that the suing and laboring clause, which for the reasons already given specially provides for this case, has been allowed to remain a part of the policy, and that a special provision as to a particular subject-matter is to be preferred to general language, which might have governed in the absence of such special provision. Generalia specialibus non derogant. Specialia generalibus derogant. In our opinion, quite apart from usage, the true construction of the policy, as reconciling and giving effect to all its provisions, is that the warranty against particular average does no more than limit the insurance to total loss of the freight by the perils insured against, without reference to extraordinary labor or expense which may be incurred by the assured in preserving the freight from loss, or rather from never becoming due, by reason of the operation of perils insured against, and that the latter expenses are specially provided for by the suing and laboring clause, and may be recovered thereunder."

In distinguishing and holding inapplicable to the case then before the court the cases of Great Indian Peninsular Ry. Co. v. Saunders and Booth v. Gair, the court in Kidston v. Empire Marine Ins. Co. further said that before those decisions—

"the liability of the underwriters appears to have been universally admitted and acted upon, even in the cases where the expenses were incurred to forward goods existing in specie at the port of distress, and warranted free from particular average, so that no liability could accrue to the underwriters by their not being forwarded."

We think that neither of the three English cases above referred to is applicable to the case we have here, for the reason that, the Pleiades having been stranded, this case is brought within the exception to the warranty clause of the policy in suit, and for the further reason that that clause is followed by the express provision that the underwriters, notwithstanding the warranty, would pay "any special charges for warehouse rent, reshipping, or forwarding for which they would otherwise be liable." Nor are we able to sustain the contention of the plaintiff in error that the stranding of the Pleiades was not the proximate cause of the extra expense to which the insured was necessarily put. It was, as we view it, the sole cause.

[4] We have had some doubt as to whether the insured is not precluded from recovery by that clause of the present policy which reads:

"Freight warranted free from any claim consequent upon loss of time whether arising from a peril of the sea or otherwise."

The cases relied upon in support of the point are Taylor v. Dunbar, 4 Com. Pleas L. R. 206, and Russian Bank for Foreign Trade v. Excess Insurance Company, Limited, The Times Law Reports, 383, and subdivision (b), § 55, of the English Marine Insurance Act of 1906, which reads:

"Unless the policy otherwise provides the insurer on ship or goods is not liable for any loss proximately caused by delay, although the delay be caused by a peril insured against."

In the two decisions cited the loss sued for was occasioned by damage—in the one case to meat, and in the other to barley—resulting from delay in transit, to which loss the warranty relied upon directly applied. In the prseent case, however, the action is not based upon any loss growing out of any damage to any of the property insured, for there was none; its sole basis is the excess freight the insured was compelled to pay to the carrier to get the rails transported to their destination, which forwarding charges this policy as has been shown, expressly provides the insurer should pay. We therefore think the cases, as well as the the statutory provision cited, inapplicable to the present case.

The judgment is affirmed.