**SEALIFT BULKERS, INC., Plaintiff,**

v.

**REPUBLIC OF ARMENIA,
et al., Defendants.**

**Civil Action No. 95–1293(PLF).**

United States District Court,
District of Columbia.

May 30, 1997.

Nicholas H. Cobbs, Washington, DC, for Plaintiff.

R. Scott Blaze, U.S. Dept. of Justice, Washington, DC, for Defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Sealift Bulkers, Inc. brought this action against the Republic of Armenia and the United States of America seeking payment of certain charges it incurred in transporting a U.S. donation of wheat to the Republic of Georgia. On November 22, 1996, this Court dismissed plaintiff's complaint against the United States for lack of subject matter jurisdiction. Because defendant Armenia has never made an appearance in this action, the Court also ordered plaintiff to file a status report regarding its attempts to serve process on the Republic of Armenia or to file a motion for entry of default and default judgment in accordance with Rule 55 of the Federal Rules of Civil Procedure. That motion is now before the Court.[1]

### I. BACKGROUND

As the background of this action was set out in the Court's previous Opinion of November 22, 1996, the Court shall only briefly discuss the facts here. Defendant Armenia entered into an agreement with plaintiff to charter plaintiff's vessel, The Inger, to transport a U.S. donation of wheat to a port in the Republic of Georgia and to deliver the wheat by rail to Airum, Armenia. Pl.'s Mot. for Default Judgment at 1, Ex. 3 (May 17, 1993 Charter Agreement between Sealift Bulkers and the Republic of Armenia). Upon arriving at its port of destination, Poti, Georgia, The Inger was informed that a civil war had erupted in Georgia. Due to the hostilities in the area, plaintiff requested that Armenia offer an alternative port at which it could discharge the wheat. Armenia would not name an alternative port and apparently expected that The Inger would remain off the coast of Poti, Georgia, pending further developments in the civil conflict. Armenia failed to respond to plaintiff's two subsequent requests for identification of an alternative port. Pl.'s Mot. for Default Judgment at 2, Exs. 4(c), (e), (f), (h), (i), (z) (various faxes and telefaxes dated from August 30, 1993 to October 18, 1993 between Sealift, Inc., Potomac Marine International, Inc. and International Services Corp., relaying information regarding the status of the civil war in Georgia, Sealift's requests for alternative ports, and Armenia's expectations regarding the parties' agreement).

After eleven days of waiting off the Georgian coast, plaintiff chartered a second vessel, The Catherine L, upon which it unloaded its cargo. Pl.'s Mot. for Default Judgment at 7, Exs. 4(j), 4(k) (Charter Agreement regarding The Catherine L, September 10, 1993; Message from The Inger to Sealift, Inc. regarding transfer of cargo to The Catherine L, dated September 21, 1993). Thirty-three days after the cargo was transferred to The Catherine L, the rail lines from Armenia to Georgia reopened, and the wheat was discharged from The Catherine L onto rail cars and was eventually transported to Airum, Armenia. Id., Exs. 4(m), (o), (bb), (telefax, message and fax dated from September 20, 1993 to October 25, 1993, regarding discharge and transport of wheat); Ex. 4(dd) (January 14, 1997 Inspection Certificate regarding discharge and condition of wheat).

### II. DISCUSSION

#### A. Service of Process Under the FSIA

Plaintiff demonstrates in its papers that it has carefully followed the service of process

---

1. On February 20, 1997, the Court received a letter from Van Z. Krikorian of Patterson, Belknap, Webb & Tyler. The letter advised the Court that the Republic of Armenia had sought the firm's representation in this matter, but that a client conflict prohibited it from providing Armenia with counsel. The letter further represented that the firm had advised the Embassy of Armenia to procure other counsel. Mr. Krikorian requested that the Court delay entry of default judgment because "meritorious defenses on the facts and the law certainly exist .... [and because] Armenia does not yet have the experience or resources to deal with this type of litigation,

and substantial misunderstandings exist with respect to its obligations to defend itself." A copy of this letter was sent to Ambassador Rouben Shugarian at the Embassy of Armenia together with a separate letter encouraging defendant to retain other counsel.

Although the Court was willing to and did delay entry of default judgment for a reasonable time so that the Republic of Armenia could retain new counsel, in fairness to plaintiff the Court will wait no longer. More than three months have passed since the Court received this letter, and nearly five months have elapsed since the plaintiff filed its motion for entry of default judgment.

requirements of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.* Because no "special arrangement" regarding service exists between the parties in this case under 28 U.S.C. § 1608(a)(1), and because there is no applicable international convention with which plaintiff must abide in order to effect service on Armenia under 28 U.S.C. § 1608(a)(2), plaintiff properly attempted service in accordance with Section 1608(a)(3) of the FSIA. Section 1608(a)(3) provides that when service cannot be effected under Sections 1608(a)(1) or (a)(2), it is to be done by mailing the summons, the complaint and a notice of suit (together with a translation of each into the official language of the foreign sovereign state) by any form of mail requiring a signed receipt, addressed by the Clerk of the Court to the head of the ministry of foreign affairs of the foreign state. 28 U.S.C. § 1608(a)(3); *see* Pl.'s Mot. for Default Judgment, Ex. 10(a) (July 14, 1995 letter to Clerk of the Court from attorney for plaintiff requesting assistance in effecting service pursuant to 28 U.S.C. § 1608(a)(3)); Ex. 10(b) (Affidavit of Nicholas H. Cobbs in Support of Service of Process under 28 U.S.C. § 1608(a)(3)); Ex. 10(c) (form indicating dispatch of materials to the Ministry of Foreign Affairs, Republic of Armenia by registered mail, dated July 20, 1995). The Republic of Armenia failed to respond to this method of service within thirty days.[2]

Pursuant to Section 1608(a)(4) of the FSIA, plaintiff then had two copies of the summons and complaint and a notice of suit, all translated into Armenian and requiring a signed receipt, forwarded to the Clerk of the Court. Pursuant to the same section of the Act, the Clerk of the Court dispatched all of these papers to the Secretary of State in Washington, D.C., for transmittal through diplomatic channels. On January 22, 1996, the Clerk received a certified copy of a diplomatic note from the State Department confirming that the papers were properly served on the Republic of Armenia on December 15, 1995. *See* Pl.'s Mot. for Default Judgment, Ex. 10(d) (Affidavit of Nicholas H. Cobbs requesting Foreign Mailing); Ex. 10(e) (January 22, 1996 letter from Carmen A. DePla-

cido, U.S. Department of State, to Mary Deavers, U.S. District Court Clerk's Office, verifying service). Under 28 U.S.C. § 1608(c)(1), the date of the State Department's transmittal, December 15, 1995, is the date upon which Armenia was properly served. The Court concludes that service has been properly effected on the Republic of Armenia under the Foreign Sovereign Immunities Act.

Despite the fact that plaintiff properly effected service on defendant on December 15, 1995, the Republic of Armenia failed to enter an appearance, answer or otherwise respond to the complaint. After waiting nearly one year for it to do so, the Clerk of the Court entered default against the Republic of Armenia on December 13, 1996. Armenia still has entered no appearance in this case. Plaintiff has now filed a motion for entry of default judgment and requests the Court to enter judgment against Armenia for the costs it incurred in attempting to deliver the donation of wheat from the United States to Armenia.

### B. *Plaintiff's Motion for Entry of Default Judgment*

■ Under the Foreign Sovereign Immunities Act, if a claimant has properly served a foreign sovereign defendant and the foreign sovereign has failed to respond within sixty days of service, the Court may enter default judgment; but it may do so only if the claimant is entitled to default judgment under both Rule 55 of the Federal Rules of Civil Procedure and under the FSIA itself. The FSIA provides special protections to foreign states against the swift entry of default judgments in addition to the protections normally provided under the Federal Rules. It directs that "[n]o judgment by default shall be entered by a court of the United States … against a foreign state … unless the claimant establishes [its] claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Congress intended by this provision to afford foreign sovereigns the same protections against the speedy entry of default judgment that the United States was

---

**2.** Section 1608(a)(4) provides that "if service cannot be made within 30 days under paragraph

(3), [service shall be made in accordance with this paragraph]." 28 U.S.C. § 1608(4).

given under the Federal Rules of Civil Procedure. *See Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 242 (2d Cir. 1994).[3] But neither Section 1608(e) of the FSIA nor Rule 55(e) of the Federal Rules of Civil Procedure "relieves the sovereign from the duty to defend cases and to obey court orders." *Id.*

### C. Plaintiff's Evidence of Its Right to Judgment

It is with the protections of the FSIA in mind, and specifically the requirement of Section 1608(e) that plaintiff establish its claim or right to relief with satisfactory evidence, that the Court considers plaintiff's motion for entry of default judgment against the Republic of Armenia.

■ First, while foreign sovereigns generally are presumptively immune from suit in the United States, they do not enjoy immunity when they engage in a "commercial activity" within or having a direct effect upon the United States or when they perform an act in the United States "in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. §§ 1604, 1605(a)(2). The FSIA provides that a "commercial activity" is

either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d). The Supreme Court has noted that a foreign sovereign engages in commercial activity when it engages in those activities that "can also be exercised by private citizens" as distinct from those "peculiar to sovereigns," *Saudi Arabia v. Nelson,* 507 U.S. 349, 360, 113 S.Ct. 1471, 1479, 123 L.Ed.2d 47 (1993), and that a court must determine whether the particular activities at issue are *"the type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover. Inc,,* 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992) (emphasis in

original); *see also Millen Industries, Inc. v. Coordination Council for North American Affairs,* 855 F.2d 879, 884 (D.C.Cir.1988) ("A useful inquiry ... is whether the essence or central elements of an agreement made by a foreign state 'might be made by a private person.' ").

■ Plaintiff asserts that the commercial activity exception to immunity applies to the Republic of Armenia in this case because Armenia contracted with plaintiff to transport and deliver a donation of wheat from the United States to the Republic of Armenia. Contracts for goods and services are typically considered commercial rather than governmental in nature. *Walter Fuller Aircraft Sales. Inc. v. Republic of Philippines,* 965 F.2d 1375, 1384 (5th Cir.1992). The wrinkle here is that Armenia contracted for plaintiff's services as part of a foreign aid gift of wheat, but that fact does not detract from the Court's conclusion on the evidence before it that the charter agreement and the parties' performance under it were commercial in nature. As our court of appeals has said, a foreign sovereign's participation in a foreign aid program does not by itself immunize its otherwise "commercial" transactions related to the program. *Transamerican S.S. Corp. v. Somali Democratic Republic,* 767 F.2d 998, 1003 (D.C.Cir.1985). The Court is satisfied that plaintiff has provided sufficient evidence that Armenia's charter of plaintiff's vessel falls within the "commercial activity" exception to foreign sovereign immunity.

■ Second, the Court is satisfied that the Republic of Armenia has had sufficient contacts with this forum to satisfy the due process "minimum contacts" test announced by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Armenia "purposefully avail[ed] itself of the benefit of conducting activities" in the United States by participating in the food donation program, by soliciting bids from U.S. shipowners to

---

3. Rule 55(e), Fed.R.Civ.P., provides: "No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." *See Marziliano v. Heckler,* 728 F.2d 151, 157–58 (2d Cir.1984).

transport the donation of wheat, by contracting with plaintiff to transport the wheat, and by using the U.S. mails and telecommunications systems to correspond with plaintiff. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see also Transamerican S.S. Corp. v. Somali Democratic Republic,* 590 F.Supp. 968, 977 (D.D.C.1984), *modified on other grounds,* 767 F.2d 998 (D.C.Cir. 1985).

■ The Court is also persuaded that the exercise of personal jurisdiction over defendant Armenia in this case is both "reasonable" and "fair." *See International Shoe Co. v. Washington,* 326 US. at 317, 66 S.Ct. at 158–59. Because the case arose out of a U.S. foreign aid program, questions of U.S. law are involved. Because the plaintiff is a U.S. corporation, the United States has a strong interest in adjudicating the dispute. Although litigation in this Court is not most convenient for Armenia, the Republic of Armenia does maintain an embassy in the District of Columbia, and it could not claim surprise at the notion of being summoned to defend its actions with respect to Sealift Bulkers in a court of the United States.

■ Finally, in its motion for default judgment plaintiff claims that Armenia owes payment for the "special charges" it incurred while off the Georgian coast and argues that the "New Jason Clause" contained in the charter agreement establishes Armenia's liability. The New Jason Clause, clause 29, provides:

> In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, for which, or for the consequences of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, receivers or owners of the goods shall contribute with the carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and *special charges* incurred in respect to the goods.

Pl.'s Mot. for Default Judgment, Ex. 3 (May 17, 1993 Charter Agreement between Sealift Bulkers and the Republic of Armenia) (emphasis added). Plaintiff asserts that because "[s]pecial charges are expenses which are incurred 'for the safety or preservation' of just the cargo," *Id.* at 18 (quoting *Firemen's Fund Ins. Co. v. Trojan Power Co.,* 253 F. 305, 307 (9th Cir.1918)), Armenia is responsible for the cost of plaintiff having protected the cargo of wheat by transferring it from The Inger and storing it in a "safe place," The Catherine L. *Id.* at 22.

Plaintiff does take note of two provisions, clauses 10 and 34, in the Charter Agreement that could contradict its interpretation of the agreement and therefore put in question Armenia's liability for the special charges. Clause 10 states that "[t]he cargo is to be discharged at Vessel's time, risk and expense with no demurrage, no despatch, and no detention." Pl.'s Mot. for Default Judgment, Ex. 3. Clause 34 provides: "[I]f the cargo cannot be discharged by reason of Riots [or] civil Commotions, ... no claim for damages or detention on that account shall be made by the Charters, Receivers of the cargo, or Owners or Operators of the Vessel." *Id.* Despite this language, plaintiff argues that the New Jason Clause should control Armenia's liability in this instance for two separate reasons.

First, plaintiff maintains that the civil war in Georgia presented a far greater risk than civil commotion or riots, and that this risk therefore was "a far greater war hazard than that contemplated by the parties when the charter was made." Pl.'s Mot. for Default Judgment at 22 (quoting *The Wildwood,* 133 F.2d 765 (9th Cir.), *cert. denied,* 319 U.S. 771, 63 S.Ct. 1436, 87 L.Ed. 1719 (1943)). Second, plaintiff contends that the term "special charges" in the New Jason Clause is different from the terms "demurrage" or "detention," the language of both clause 10 and clause 34, in that "demurrage" and "detention" signify costs for delay to The Inger itself, not costs due to The Inger's actions in protecting its cargo. Thus, it argues, there is no genuine conflict between the various clauses of the Charter Agreement, and the New Jason Clause applies to the situation presented here.

Plaintiff's interpretation of the contract is not an unreasonable one. Without the benefit of Armenia's own analysis, the Court finds that plaintiff's argument, along with the myriad exhibits, declarations, transmittals, and invoices accompanying plaintiff's motion for entry of default judgment, have provided "evidence satisfactory to the court" under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(e), to establish plaintiff's claim or right to relief against the defendant in default, the Republic of Armenia. Plaintiff therefore is entitled to be paid for the cost of transferring the wheat to The Catherine L ($63,000) and the cost of chartering The Catherine L ($370,501.03), or a total of $433,501.03 (plus interest calculated since October 27, 1993, the date on which plaintiff completed payment for these expenses). Pl.'s Mot. for Default Judgment, Ex. 6(a), (b), (c) (Lease Agreement between Sealift, Inc. and Colt Int'l, Inc. for use of "vacuvators" to discharge wheat from The Inger to The Catherine L; invoice and account statements regarding cost); Ex. 7 (faxes, account statements, bank receipts and invoices regarding cost and payment of chartering The Catherine L). A separate Order reflecting Judgment in these amounts shall be entered this same day.

SO ORDERED.

### ORDER AND JUDGMENT

Upon consideration of plaintiff's motion for default judgment against defendant Republic of Armenia and the exhibits and declarations submitted therewith, it is hereby

ORDERED that plaintiff's motion for default judgment against defendant Republic of Armenia is GRANTED; it is

FURTHER ORDERED that judgment be entered against defendant Republic of Armenia in the amount of four hundred thirty-three thousand five hundred one dollars and three cents ($433,501.03), plus interest from October 27, 1993 to December 31, 1996 totaling one hundred eleven thousand three hundred ten dollars and sixteen cents ($111,310.16), plus interest in the amount of ninety-nine dollars and thirty-four cents ($99.34) per day from January 1, 1997 until the date of payment of this Judgment, plus costs; it is

FURTHER ORDERED that plaintiff shall take steps to assure that a copy of this Order and Judgment and accompanying Opinion be sent to the Republic of Armenia in the manner prescribed in the Foreign Sovereign Immunities Act, see 28 U.S.C. § 1608(e); and it is

FURTHER ORDERED that the Clerk of the Court shall remove this case from the Court's docket.

SO ORDERED.