**Mohamed Salem EL–HADAD, Plaintiff,**

v.

**EMBASSY OF THE UNITED ARAB EMIRATES, et al., Defendants.**

**No. CIV. A. 96–1943 SSH.**

United States District Court,
District of Columbia.

Aug. 30, 1999.

Silvia J. Rolinski, Silver Spring, MD, for Plaintiff.

John Thomas Szymkowicz, Szymkowicz & Buffington, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

■ Plaintiff brings this breach of contract and defamation action against the United Arab Emirates ("U.A.E."), the Embassy of the United Arab Emirates ("the Embassy"), and three individuals acting in their official capacities on behalf of the U.A.E.—Saif Rashid Al–Suwaidi ("Al–Suwaidi"), Magid Al–Khazragi ("Al–Khazragi"), and Nahyan bin Mubark Al–Nahyan ("Al–Nahyan"). Before the Court are defendants' motion to dismiss the amended complaint and related pleadings.[1] The Court treats this motion to dismiss as being made on behalf of all five defendants.[2] Upon consideration of the sufficiency of

1. A motion to dismiss the original complaint also was filed. The Court considers only the motion to dismiss the amended complaint, because the previous motion to dismiss was mooted when plaintiff filed an amended complaint. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994). Because plaintiff's amended complaint did not refer to and adopt the original complaint, it superseded the original complaint. It follows that a motion to dismiss a superseded complaint has no legal effect.

2. The motion to dismiss the original complaint was filed on behalf of three of the four original defendants. The motion to dismiss the amended complaint was submitted by all five defendants ultimately named. In plaintiff's opposition to the motion to dismiss the amended complaint, however, he notes that the parties entered into a stipulation on April 7, 1997, setting the time for only defendants Al–Nahyan and Al–Khazragi, the two defendants who did not join the first motion to dismiss, to respond to the complaint. Thus, plaintiff's opposition addresses only their arguments and requests that the Court strike the remaining three defendants from the motion to dismiss the amended complaint. If the Court does not, plaintiff requests an additional opportunity to brief the motion to dismiss the amended complaint as to those three defendants.

Defendants contend that plaintiff's amended complaint nullified any previously filed pleadings, and thus, the first motion to dismiss and related pleadings are moot. Defendants also argue that, because plaintiff has addressed the motion to dismiss the amended complaint as to only two defendants, plaintiff has conceded the arguments of the remaining three defendants.

The Court declines to strike the three defendants from the second motion to dismiss. Simply because the parties stipulated to allow two defendants additional time to file dispositive motions does not bar the remaining defendants, who have a right to respond to the amended complaint, from filing a timely motion to dismiss. While the remaining defendants may have responded to the amended complaint beyond their allotted time under Fed.R.Civ.P. 12(a)(1)(B), plaintiff did not raise this argument, and the Court will allow their out-of-time filing.

The Court will not, however, afford plaintiff a further opportunity to brief the motion to dismiss the amended complaint as to the three defendants. The Court provides its reasoning further in this Opinion on pages 13–14. With the exception of the motion to dismiss for lack of personal jurisdiction, plaintiff will not be prejudiced by the lack of opportunity for further briefing since the Court denies most of defendants' motion to dismiss. The

the complaint, the Court grants defendants' motion to dismiss for lack of personal jurisdiction as to Al–Suwaidi, Al–Khazragi, and Al–Nahyan, but denies the remainder of the motion. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice,* 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

### Background

Plaintiff is an Egyptian citizen and a domiciliary of Virginia. For thirteen years, he was employed as an auditor of accounts in the U.A.E. From January 1993 to February 1996, plaintiff was employed as an auditor in the Cultural Division of the Embassy in Washington, D.C. He claims that he was dismissed from his position without apparent cause or notice, and that his discharge was influenced by his discovery of damaging information about some of his superiors at the Embassy. In June 1996, the Embassy rehired plaintiff in the military attache's office. Plaintiff claims that this employment was on an *ad hoc* basis and was intended to dissuade him from seeking a legal remedy for his previous dismissal. Plaintiff claims that he was summarily dismissed in August 1996, when he refused to discontinue his efforts to file a lawsuit. On August 22, 1996, plaintiff filed his original complaint against the U.A.E., the Embassy, Al–Suwaidi as Director of Financial and Administrative Affairs, and Al–Khazragi as Director of the State Audit Institution, alleging breach of contract and defamation. In October 1996, plaintiff amended his complaint to add Al–Nahyan, Minister of Higher Education and Scientific Research; furthermore, plaintiff alleged that defendants attempted to compel him to withdraw his original complaint, and when he refused, plaintiff's wife was dismissed from her position at the Embassy. Defendants U.A.E., the Embassy, and Al–Suwaidi, through their attorney, stipulated to service of the original complaint on October 10, 1996. On February 19, 1997, defendants Al–Khazragi and Al–Nahyan also stipulated to service through counsel.

After the amended complaint was filed, but before defendants Al–Khazragi and Al–Nahyan stipulated to service, the U.A.E., its Embassy, and defendant Al–Suwaidi filed a motion to dismiss to the original complaint. An opposition and a reply followed. Thereafter, all five defendants filed a motion to dismiss the amended complaint, seeking essentially the same relief as requested in the previously filed motion.

### Analysis

Defendants assert six bases for dismissing some or all of plaintiff's claims: (1) lack of subject matter jurisdiction as to all the claims under the Foreign Sovereign Immunities Act ("FSIA"); (2) lack of personal jurisdiction over all the defendants; (3) lack of subject matter jurisdiction as to plaintiff's defamation claim under the FSIA; (4) preclusion of judicial review under the Act of State doctrine; (5) lack of jurisdiction because the acts occurred within a foreign mission; and (6) immunity for defendants Al–Suwaidi, Al–Khazragi, and Al–Nahyan under the doctrine of Head of State immunity. The Court finds no merit in defendants' six defenses, except the lack of personal jurisdiction as to the three individual defendants.[3]

Court will not consider plaintiff's lack of opposition to be concessions to defendants' arguments, but rather, the Court simply will assess the motion to dismiss without the benefit of plaintiff's opposition.

3. The Court briefly considers plaintiff's argument that the motion to dismiss should be denied because defendants rely on facts outside the record. Plaintiff argues that if the Court were to convert this motion pursuant to

Fed.R.Civ.P. 12(c) to a summary judgment motion because extrinsic facts are presented, defendants do not provide the proper supporting materials as required by Fed.R.Civ.P. 56(e), and thus, the motion should be denied as procedurally defective. Alternatively, plaintiff urges the Court to disregard the extrinsic facts.

First, when considering a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the

I. *Subject Matter Jurisdiction*

[redacted] The FSIA, codified at 28 U.S.C. §§ 1330, 1391, 1441, 1602–1611 (1994), is the "sole basis for obtaining jurisdiction over a foreign state in our courts," *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). It therefore must be applied in every action involving a foreign state defendant. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 489, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Under the FSIA, a foreign state is immune from the jurisdiction of U.S. courts unless the challenged conduct falls within certain limited statutory exceptions, as set forth in 28 U.S.C. § 1604. *Argentine Republic,* 488 U.S. at 434, 109 S.Ct. 683. The scope of sovereign immunity for a foreign state extends to any political subdivisions, instrumentalities, and agencies of that state, *McKesson Corp. v. Islamic Republic of Iran,* 52 F.3d 346, 351 (D.C.Cir.1995); individuals committing acts within their official capacities are considered agencies or instrumentalities of a foreign state. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1027 (D.C.Cir. 1997); *El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 671 (D.C.Cir.1996); *see Underwood v. The United Republic of Tanzania,* 1995 WL 46383, at *2 (D.D.C. Jan.27, 1995) (an embassy of a sovereign nation is a foreign state); *TIFA, Ltd. v. Republic of Ghana,* 1991 WL 179098, at *7 (D.D.C. Aug.27, 1991) (embassy of Ghana is an instrumentality of Ghana).

The Court concludes, and defendants do not dispute, that all five defendants fall within the definition of "a foreign state" for purposes of the FSIA, and that the FSIA therefore applies to this action as to all five defendants. The Court thus must determine whether subject matter jurisdiction exists under the FSIA.

A. *"Commercial activity" exception*

[redacted] Under the FSIA, the plaintiff first must produce evidence that shows an exception to the FSIA applies; the foreign state then has the ultimate burden of persuasion that the exception does not apply. *Princz v. Federal Republic of Germany,* 26 F.3d 1166, 1171 (D.C.Cir.1994). The activity upon which this action is based is the U.A.E.'s employment and termination of plaintiff. Plaintiff contends that defendants' conduct with respect to his employment falls within the "commercial activity" exception of the FSIA, codified at 28 U.S.C. § 1605(a)(2). That section provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> ....
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

The Court must therefore determine whether defendants' actions with respect to plaintiff's employment are considered commercial activity.

conversion feature of Rule 12 does not apply, and the Court "may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.' " *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987) (quoting *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 362–63 (D.C.Cir.1982)). Nevertheless, the Court determines that it may decide the Rule 12(b)(1) motion, as well as the remainder of the motion to dismiss, without reference to the extrinsic facts. "Under Rule 12(b), Fed.R.Civ.P., the Court has discretion not to accept matters outside the pleadings presented by any party in conjunction with a Rule 12(b)(6) motion, particularly where the proffered material and the conversion from a motion to dismiss to one for summary judgment will not facilitate the disposition of the action." *Thomas v. District of Columbia,* 887 F.Supp. 1, 5 n. 1 (D.D.C.1995). The Court therefore considers this motion as a motion to dismiss without regard to extrinsic facts.

Congress has stated that the commercial character of the activity is determined by examining the nature, rather than the purpose, of the activity. 28 U.S.C. § 1603(d). But Congress "deliberately left the meaning open and ... 'put [its] faith in the U.S. courts to work out progressively, on a case-by-case basis ... the distinction between commercial and governmental.' " *Practical Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1549 (D.C.Cir.1987) (quoting *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 308–9 (2d Cir.1981)). The courts have concluded that "a foreign sovereign engages in commercial activity when it engages in those activities that 'can also be exercised by private citizens,' as distinct from those 'peculiar to sovereigns.' " *Sealift Bulkers v. Republic of Armenia,* 965 F.Supp. 81, 84 (D.D.C.1997) (quoting *Saudi Arabia v. Nelson,* 507 U.S. 349, 360, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993)); *see Janini v. Kuwait Univ.,* 43 F.3d 1534, 1537 (D.C.Cir. 1995).

■ A foreign state's employment of individuals can be characterized as either governmental or commercial activity depending on whether the employment relationship is "peculiar to sovereigns." The existing caselaw and legislative history therefore have categorized employment relationships as such: "employment of diplomatic, civil service or military personnel is governmental and the employment of other personnel is commercial." *Holden v. Canadian Consulate,* 92 F.3d 918, 921 (9th Cir.1996); *see also* H.R.Rep. No. 94–1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615 ("Also public or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel .... Activities such as a foreign government's ... employment or engagement of laborers, clerical staff or marketing agents ... would be among those included within the definition [of commercial activity]").

Given this categorization of employment relationships, defendants argue that termination of plaintiff's employment was a governmental function because plaintiff was a civil servant. Defendants focus on *Holden v. Canadian Consulate,* in which the Ninth Circuit noted that "[b]ecause private parties cannot hire ... civil service ... personnel, such hiring is necessarily governmental." 92 F.3d at 921. Defendants rely on *Holden*'s discussion of various factors for determining who is considered a civil servant, as well as U.A.E. law and regulations which purportedly categorize plaintiff as a civil servant.

Defendants' argument, however, is inconsistent with the decisive factor in this case, as well as a D.C. Circuit case, *Broadbent v. Organization of American States,* 628 F.2d 27 (D.C.Cir.1980), and a key statement in House Report No. 94–1487, that lead the Court to conclude that defendants' actions constitute commercial activity. In *Broadbent,* this Circuit clearly indicated, albeit in dicta, that the employment relationship at issue in this case is of a commercial nature. That court quoted the relevant portion of House Report 94–1487: "Also public or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, *but not the employment of American citizens or third country nationals by the foreign state in the United States.*" *Id.* at 34 (emphasis added). The Court of Appeals commented that "[t]his report clearly marks employment of civil servants as noncommercial for purposes of restrictive immunity. The Committee Reports establish an exception from the general rule in the case of employment of American citizens or third country nationals by foreign states." *Id.* The D.C. Circuit explained the policy rationale underlying such a carve-out for American citizens and third country nationals: "The exception leaves foreign states free to conduct 'governmental' matters through their own citizens." *Id.* In contrast, the *Broadbent* plaintiff was an American citizen employed by an international organization, not a foreign state, so that the exception was not applicable because "[international organizations'] civil servants are inevitably drawn

from either American citizens or 'third' country nations. In the case of international organizations, such an exception would swallow up the rule of immunity for civil service employment disputes." *Id.* at 34.

Similarly, in *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine*, 833 F.Supp. 1089, 1093–1094 (S.D.N.Y.1993), the court found that the employment of an American citizen as a secretary in the New York office of a Brazilian agency was commercial activity. The court stated, "[a]ccording to the Report of the House Judiciary Committee, 'the employment of American citizens or third country nationals [as civil service personnel] by the foreign state in the United States,' in contrast to employment of citizens of the foreign sovereign, 'would be commercial.'" *See also Elliott v. British Tourist Auth.*, 986 F.Supp. 189, 193–194 (S.D.N.Y.1997), *aff'd*, 172 F.3d 37 (2d Cir.1999) (unpublished table decision) ("As the legislative history makes clear, employment by a foreign

state can be characterized as either commercial or governmental, depending on the nature of the employment. The hiring (and firing) of diplomatic staff and civil servants is an inherently governmental activity and therefore subject to immunity. On the other hand, the hiring (and firing) of American citizens or of clerical staff is commercial in nature and not subject to immunity.").[4]

In short, the only employment relationships of a foreign state that are governmental in nature are relationships with diplomatic, civil service, or military employees who are neither U.S. citizens nor third country nationals employed in the United States. The hiring of all other employees is commercial. Here, plaintiff's complaint alleges that plaintiff is a third country national (an Egyptian citizen) employed by a foreign state (the U.A.E.) in the United States (in the U.A.E. Embassy in Washington, D.C.).[5] Defendants agree in their Motion To Dismiss that plaintiff is an adult citizen of Egypt employed by the

4. Some Circuits have not readily applied the exception that the D.C. Circuit has identified for a foreign state's employment of American citizens and third country nationals in the United States, or at least they have not treated this characteristic as dispositive in finding commercial activity. *See generally* Richard L. Garnett, *The Perils of Working for a Foreign Government: Foreign Sovereign Immunity and Employment*, 29 Cal. W. Int'l L.J. 133 (1998). In *Holden v. Canadian Consulate*, the Ninth Circuit held that the employment of an American citizen as a marketing agent for the Canadian Consulate located in San Francisco was commercial activity, not because she was a U.S. citizen employed by a foreign state in the United States, but because she was not diplomatic, civil service, or military personnel. 92 F.3d at 921–22.

The Seventh Circuit also has not considered dispositive a plaintiff's status as a third country national employed by a foreign state in the United States, although it noted that it might be relevant. In *Segni v. Commercial Office of Spain*, 835 F.2d 160 (7th Cir.1987), the Court held that the case fell within the commercial activity exception because the plaintiff was not diplomatic or civil service personnel. In a footnote, the Court also stated:

It is also worth noting that Segni is not a citizen of Spain. The legislative history of the FSIA suggests that an employee's status

as a 'third country national' is relevant to the commercial nature of his employment. We need not determine how important this factor is, though; it is sufficient to observe that a person hired by his own country's government to work abroad should have a somewhat lesser expectation of suing his homeland in his host nation's courts.

*Id.* at 165 n. 7 (internal citation omitted). *But see Segni v. Commercial Office of Spain*, 650 F.Supp. 1045, 1047 (N.D.Ill.1987) (district court concluded that commercial activity exception applied because plaintiff was an Argentine national employed by Spain in the United States, and "[t]he House Report concerning the commercial activities exception clearly states that the employment of third party nationals by the foreign state in the United States is a commercial activity.").

5. The Court notes that while the premises of a foreign embassy are inviolable, they are also considered within the territorial jurisdiction of the United States. *See* Restatement (Third) of Foreign Relations § 466 cmt. a (1987) ("That premises are inviolable does not mean that they are extraterritorial. Acts committed on those premises are within the territorial jurisdiction of the receiving state . . . ."); *Fatemi v. United States*, 192 A.2d 525 (D.C.1963) ("a foreign embassy is not to be considered the territory of the sending state"). *Cf. Per-*

U.A.E., which engages in activities within the United States only through its Washington Embassy, at which plaintiff was employed. Defs.' Mot. To Dismiss Am. Compl. at 1–2. This case therefore fits squarely into the type of employment relationships that this Circuit has recognized as being commercial activity. Whether plaintiff was a civil servant is irrelevant because even if he is a civil servant, he is a third country national employed in the United States.

Having determined that defendants engaged in a "commercial activity," the Court finds that this case falls within the commercial activity exception, because it fits within the first sentence of § 1605(a)(2): plaintiff's claims of breach of contract and defamation are "based upon a commercial activity carried on in the United States by the foreign state" since the employment was carried on in the U.A.E. Embassy in the United States. Subject matter jurisdiction therefore exists over plaintiff's claims.

### B. Jury demand

██ If, in a civil case, sovereign immunity does not apply, a foreign state is protected to the extent that the case must be tried without a jury. See 28 U.S.C. § 1330(a) (for an action in which the foreign state is not entitled to sovereign immunity, "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) . . . ."); *Universal Consol. Companies, Inc. v. Bank of China*, 35 F.3d 243, 244–45 (6th Cir.1994) ("While the language of § 1330 might have stated the rule more clearly, . . . all federal appellate courts which have considered the issue— including the Second, Third, Fourth, Fifth, and Eleventh Circuits—have held that

*singer v. Islamic Republic of Iran*, 729 F.2d 835 (D.C.Cir.1984) (United States embassies abroad were not considered within the United States for purposes of the FSIA provision allowing suit against foreign states for tortious injury "occurring in the United States.").

jury trials are not available in suits brought under the Act."). Accordingly, the Court strikes plaintiff's jury demand as to all five defendants.

### II. *Personal Jurisdiction*

While the Court may have subject matter jurisdiction over this case, defendants argue that the Court must dismiss the complaint because the Court lacks personal jurisdiction over each of them. When a defendant alleges lack of personal jurisdiction, a plaintiff must present a prima facie case that personal jurisdiction exists. See *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C.Cir.1990); *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F.Supp.2d 47, 50 (D.D.C.1998). This requirement must be met with respect to each defendant. See *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988); *Overseas Partners*, 15 F.Supp.2d at 50. In establishing a prima facie showing of personal jurisdiction, plaintiff is entitled to having his complaint and any doubts resolved in the light most favorable to him. *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C.1998). However, plaintiff "cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *Id.*; *Sunlite, Inc. v. BfG Bank AG*, 849 F.Supp. 74, 75 (D.D.C.1994).

██ Establishing personal jurisdiction over a foreign state requires a two-step analysis. First, personal jurisdiction under the FSIA is governed by 28 U.S.C. § 1330(b), which sets forth a simple formula: personal jurisdiction is obtained when subject matter jurisdiction exists over that claim and valid service of process has been accomplished pursuant to 28 U.S.C. § 1608.[6] See *Gilson v. Republic of*

6. Defendants focus on whether the District of Columbia's long-arm statute has been satisfied. However, because the FSIA applies to defendants, 28 U.S.C. § 1330(b) provides the statutory basis for personal jurisdiction, as it is "in effect, a Federal long-arm statute over

*Ireland,* 682 F.2d 1022, 1028 (D.C.Cir. 1982); *Flatow v. Islamic Republic of Iran,* 999 F.Supp. 1, 16 (D.D.C.1998). However, satisfying this statutory scheme is not sufficient, as Congress may not grant jurisdiction where it would violate the Constitution's Due Process Clause. The Court therefore must also determine whether exercising personal jurisdiction over the defendants is constitutionally permissible. *See, e.g., Creighton Ltd. v. Government of the State of Qatar,* 181 F.3d 118, 1999 WL 446009 at *6 (D.C.Cir. July 2, 1999); *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 759 F.Supp. 855, 860 (D.D.C. 1991).[7]

Instead of making a prima facie case that personal jurisdiction exists under this analysis, plaintiff opposes the motion to dismiss for lack of personal jurisdiction by making two arguments: (1) that defendants' counsel has waived any defenses based on personal jurisdiction by stipulating to accept service on behalf of his clients; and (2) that the three defendants who brought the first motion to dismiss (the U.A.E., the Embassy, and Al–Suwaidi) waived any arguments based on personal jurisdiction that they failed to raise in the first motion to dismiss. Plaintiff then states that if the Court allows any or all of the arguments made by these defendants to stand, the Court should afford plaintiff further opportunity to brief these issues.

■ First, plaintiff errs in arguing that defense counsel's stipulation to accept service on behalf of his clients conferred personal jurisdiction over defendants. Defense counsel consented to service via special arrangement under 28 U.S.C. § 1608, which governs service on foreign states. It is clear, however, that simply consenting to service is not sufficient to confer personal jurisdiction because 28 U.S.C. § 1330(b) requires both service in accordance with 28 U.S.C. § 1608 and the existence of subject matter jurisdiction for personal jurisdiction. Furthermore, once the statutory requirements of § 1330(b) are met, a due process analysis must also be conducted to establish personal jurisdiction. Therefore, the Court rejects plaintiff's contention that mere stipulation to service confers personal jurisdiction.

■ Second, the Court is not persuaded by plaintiff's argument that the three defendants who brought the first motion to dismiss waived any personal jurisdiction arguments that they may not have raised in the first motion to dismiss. Because the motion to dismiss the original complaint was nullified once plaintiff filed an amended complaint, the Court considers the motion to dismiss the amended complaint to be defendants' first opportunity to raise affirmative defenses.

Having rejecting plaintiff's only arguments regarding the issue of personal jur-

---

foreign states." Thus, the Court considers only whether § 1330(b), and not the D.C. long-arm statute, has been satisfied. H.R. Rep. 94–1487, at 13 (1976) *reprinted in* 1976 U.S.C.C.A.N. 6604, 6612; *see Maritime Int'l Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1109 n. 23 (D.C.Cir.1982).

**7.** In *Flatow v. Islamic Republic of Iran,* this court recently noted this constitutional analysis is unnecessary for a foreign state because it, like the federal government and the individual states, is not a "person" for purposes of the Due Process Clause. 999 F.Supp. at 18; *see also Rios v. Marshall,* 530 F.Supp. 351, 372 n. 22 (S.D.N.Y.1981) (foreign states are not persons subject to liability under certain federal statutes). The D.C. Circuit has not resolved this issue. *Creighton Ltd.,* 181

F.3d 118, 124 (discussing in dicta the possibility that due process analysis of personal jurisdiction may not apply to foreign states). However, the *Flatow* court also noted that a foreign state as a commercial actor may be considered a "person" for constitutional due process purposes, because when it so acts, it "divests itself ... of its sovereign character, and takes that of a private citizen." *Flatow,* 999 F.Supp. at 17 (quoting *Bank of United States v. Planters' Bank of Georgia,* 22 U.S. (9 Wheat.) 904, 907, 6 L.Ed. 244 (1824)). Because the Court has determined that defendants engaged in a commercial activity, and because the D.C. Circuit has not yet resolved whether the due process clause applies to foreign states, the Court considers the U.A.E. a "person" and conducts the constitutional due process analysis.

isdiction, the Court declines to afford plaintiff further opportunity to brief the issue. Plaintiff cites no legal authority for expecting a further opportunity for briefing. The Court has no desire to prolong this litigation by encouraging plaintiff's tactical decision to raise additional arguments in a piecemeal fashion. In the interest of efficiency and fairness to the parties, plaintiff should have submitted all his arguments in his opposition, making them in the alternative, instead of expecting the Court to afford a further opportunity. *Cf. Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1280 (D.C.Cir.1994) (affirming denial of plaintiff's "bare request" made in an opposition to a motion to dismiss to amend complaint if the court found the complaint inadequate).[8] Furthermore, Local Rule 108(b) requires that the opposing party shall serve and file an opposition to a motion "within 11 days of the date of service or at such other time as the Court may direct." By reserving some arguments until after the Court rules on plaintiff's current arguments, plaintiff essentially would circumvent Local Rule 108(b). The Court declines to allow this.

The Court therefore considers defendants' motion to dismiss for lack of personal jurisdiction based only on plaintiff's complaint and plaintiff's opposition to the motion to dismiss as presently before the Court. Applying 28 U.S.C. § 1330(b), the Court finds that the statutory requirements for personal jurisdiction are met as to all five defendants: subject matter jurisdiction exists through the commercial ac-

tivity exception, and plaintiff has indicated in his opposition that all five defendants have stipulated to service in a manner acceptable under § 1608(a)(1) and § 1608(b)(1).

■ The Court finds, however, that personal jurisdiction is constitutionally permissible only as to the U.A.E. and the Embassy, but not the three individual defendants. The burden is on the plaintiff to demonstrate sufficient contacts with the forum. *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C.Cir. 1988); *TIFA, Ltd.*, 1991 WL 179098, at *8. When a defendant resides in or is present in the forum state, due process concerns are minimal. "Jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of traditional notions of fair play and substantial justice." *Burnham v. Superior Court*, 495 U.S. 604, 619, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion); *see Begum v. Auvongazeb*, 695 A.2d 112, 113 (D.C.1997). If the defendant is not present within the forum territory, due process requires that "he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–93, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Four factors affect whether "minimum contacts" exist: (1) the

---

8. For the sake of comparison, this piecemeal approach is prohibited in other contexts such as requests for federal prison medical records, Freedom of Information Act (FOIA) cases, and arbitration contexts. *See Benavides v. U.S. Bureau of Prisons*, 995 F.2d 269, 273 (D.C.Cir.1993) ("As we have noted in the context of FOIA litigation, the government is not entitled to raise defenses to requests for information seriatim until it finds a theory that the court will accept, but must bring all its defenses at once before the district court."); *American Broad. Companies, Inc. v. United States Info. Agency*, 599 F.Supp. 765, 767 (D.D.C.1984) ("It makes sense that government agencies involved in FOIA litigation should be prepared to raise all claims under the FOIA, and in the alternative, at the initial stages of the proceedings, so that the plaintiff may respond, and the court rule, in the most expeditious manner."); *Washington–Baltimore Newspaper Guild, Local 35 v. The Washington Star Co.*, 1982 WL 2098, at *4 (D.D.C. Nov.30, 1982) ("It is well established that the efficacy of the arbitration process depends on the parties raising all relevant arguments. A party cannot argue his case piecemeal, reserving certain arguments until after arbitration is complete, and then asserting the reserved argument as a defense to enforcement of an award.") (internal quotation omitted).

extent to which the defendants availed themselves of the privileges of American law; (2) the extent to which litigation in the United States would be foreseeable to them; (3) the inconvenience to defendants in litigating in the United States; and (4) the countervailing interests of the United States in hearing the suit. *TIFA, Ltd.*, 1991 WL 179098, at *8; *see Gilson*, 682 F.2d at 1028–29. Also, "in assessing personal jurisdiction under either a constitutional due process standard or a statutory standard, courts may look to the contacts between the forum and agents of the defendant." *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1105 (D.C.Cir.1982); *see also Texas Trading and Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 314–15 (2d Cir.1981).

As for the Embassy, the Court finds that the allegations in plaintiff's amended complaint establish personal jurisdiction over it. It is uncontroverted that the Embassy is located in the District of Columbia, obviously thus physically present in this jurisdiction. Pl.'s Am. Compl. at ¶ 4; Defs.' Mot. To Dismiss Am. Compl. at 1. Furthermore, the actions which plaintiff alleges in his amended complaint were performed on behalf of the Embassy— among them, that someone in the Embassy fired plaintiff, rehired him in the military attaché's office, dismissed him again, and made repeated phone calls to his home in Virginia to compel plaintiff to withdraw his complaint—were conducted in the United States, or at least established sufficient contact with this forum to justify maintaining personal jurisdiction over the Embassy. Defendants even state that "[t]he Embassy of the United Arab Emirates is actually managed by diplomats residing in the United States of America rather than by governmental officials in Abu Dhabi." *See* Defs.' Mot. To Dismiss Am. Compl. at 13. Therefore, the actions of these diplomats, who concededly do maintain minimum contacts with the United States, can be imputed to the Embassy.

Regarding the U.A.E., the Court also finds that the U.A.E. maintained sufficient contacts with the District of Columbia to satisfy due process concerns. The only argument defendants make about the U.A.E. is subsumed in a blanket statement in their motion to dismiss that "no Defendant had [purposeful availment] contacts with the forum, nor did any Defendant ever avail themselves, purposefully or otherwise, of the benefits of conducting activities within the District of Columbia." However, they contradict themselves in their own motion, stating that the U.A.E. is a "sovereign nation which does not engage in activities within the United States, *except through its Washington Embassy.*" Defs.' Mot. To Dismiss Am. Compl. at 1 (emphasis added). Because courts may look to the contacts between the forum and agents of the defendant in determining whether to exercise personal jurisdiction, *Maritime Int'l Nominees Establishment*, 693 F.2d at 1105, the Court finds that the alleged actions on behalf of the Embassy, performed in the United States with respect to an individual domiciled in the United States, are sufficient to confer personal jurisdiction over the U.A.E. It is also reasonable to impute these acts to the U.A.E. to confer personal jurisdiction because the acts occurred in the United States and had direct effects on plaintiff's life in the United States. *Cf. Upton v. Empire of Iran*, 459 F.Supp. 264, 266 (D.D.C.1978) (because tortious act occurred in Iran, the effects in the United States were too attenuated from the act to confer personal jurisdiction). It would not be inconvenient or unforeseeable for the U.A.E. to litigate in the District of Columbia, as it does maintain an embassy in the District and employs foreign nationals in its embassy.

Furthermore, it seams both reasonable and fair to exercise personal jurisdiction over the Embassy and the U.A.E. because the action at issue—namely, the termination of plaintiff's employment—occurred in the United States, the plaintiff is an Egyptian citizen domiciled in the United States, and the U.A.E. maintains an embassy in the District of Columbia. *See*

*Sealift Bulkers,* 965 F.Supp. at 86 (exercising personal jurisdiction is reasonable and fair because case involved questions of U.S. law, plaintiff was a U.S. corporation, and foreign state maintained an embassy in the District of Columbia).

The Court finds, however, that plaintiff has not established in his amended complaint exactly how the individual defendants were involved in plaintiff's case. In listing the parties, the amended complaint sets forth conclusory allegations about each individual defendant's contacts with the United States and the District of Columbia, repeated verbatim for each individual defendant:

> [defendant] is an individual who holds office in the Embassy of the UAE and who from time to time functions as an instrumentality, arm, agency or representative of the UAE in the United States and the District of Columbia and who has substantial contact with the United States and with the District of Columbia and who engages in and transacts commercial activity, and engages in a regular course of commercial conduct in the United States and the District of Columbia, and which did, engaged in and conducted the commercial activity, transaction and conduct which forms the basis of this action.

Pl.'s Am. Compl. at ¶¶ 6–8. Plaintiff provides no specific factual support for these allegations. In fact, beyond describing them as parties, plaintiff makes no other reference at all to Al–Suwaidi and Al–Khazragi in his amended complaint. Plaintiff mentions Al–Nahyan only one more time to say that plaintiff was dismissed from his position, "which dismissal ... was executed by Shikh Nahian Bin Mubark Al Nahian." Pl.'s Am. Compl. at ¶ 9. While the Court will consider all allegations of jurisdictional facts in a light most favorable to the assertion of personal jurisdiction, conclusory jurisdictional statements will not suffice. Plaintiff provides no specific factual information to allow the Court to infer that Al–Nahyan may have executed his dismissal, such as whether Al–Nahyan had authority to effect the dis-

missal or how Al–Nahyan executed the dismissal. The Court finds that this statement alone does not make a prima facie showing of personal jurisdiction. Consequently, the Court dismisses the three individual defendants Al–Nahyan, Al–Suwaidi, and Al–Khazragi.

### III. *Defamation Claim*

■ Count II of plaintiff's amended complaint asserts that defendants published statements that disparaged plaintiff's professional and personal reputation, called into question his professional ethics, abilities, and competence, and held him up to ridicule in the presence of third parties. Defendants contend that the Court should dismiss Count II as a matter of law because the FSIA provides immunity for any claim arising out of libel or slander. Specifically, 28 U.S.C. § 1605(a)(5) provides an exception to sovereign immunity for any tortious act or omission of a foreign state in which money damages is sought for personal injury, death, or damage to or loss of property that occurred in the United States. However, 28 U.S.C. § 1605(a)(5)(B) creates an exception to this exception, and states that foreign states are immune from tort actions based on malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. Defendants therefore claim that § 1605(a)(5)(B) bars plaintiff's defamation claim.

This Court disagrees with defendants' reading of the concededly confusing structure of § 1605(a). Section 1605(a)(2) and § 1605(a)(5)(B) are mutually exclusive provisions. This court has stated that "[t]he clear language of the statute declares that section 1605(a)(5) does not apply to section 1605(a)(2). Therefore, the exception to section 1605(a)(5) contained in section 1605(a)(5)(B) ... does not apply to claims brought under § 1605(a)(2)." *Foremost–McKesson, Inc.,* 759 F.Supp. at 858–59. *See Gilson,* 682 F.2d at 1027–28 n. 27 (noting in dictum that § 1605(a)(5)(B) does not limit § 1605(a)(2)); *see also Export Group v. Reef Indus.,* 54 F.3d 1466, 1474–75 (9th Cir.1995); *Letelier v. Republic of*

*Chile,* 748 F.2d 790, 795 (2d Cir.1984). Stated another way, foreign states are not protected from actions based on the torts listed in § 1605(a)(5)(B) when they are acting in a commercial capacity. Because the Court has determined that this case falls within the commercial activity exception embodied in § 1605(a)(2), defendants cannot avail themselves of the tort exception contained in § 1605(a)(5)(B).

## IV. *Act of State Doctrine*

 Defendants contend that the Act of State doctrine precludes the Court's review of the challenged conduct. Historically, the Act of State doctrine has been an absolute rule of judicial abstention, whereby "[t]he courts of one country will not sit in judgment on the acts of the government of another done within its own territory." *Underhill v. Hernandez,* 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897); *see also Riggs Nat'l Corp. & Subsidiaries v. Commissioner of Internal Revenue Service,* 163 F.3d 1363, 1367 (D.C.Cir.1999). The passage of the FSIA and subsequent Supreme Court cases have caused some confusion over the applicability of the Act of State doctrine. *See Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Fortunately, the Court can dispense easily with defendants' argument because the Act of State doctrine applies only when the actions of the foreign state occur within that foreign state. *See Flatow,* 999 F.Supp. at 21. Here, the challenged act occurred within the United States, since as previously noted, a foreign state's embassy is considered to be within the host country's territory. Therefore, the Act of State doctrine is inapplicable to this case.

## V. *Acts Occurring Within a Foreign Mission*

 Defendants make a vague argument that the Court should not exercise jurisdiction over this case because the acts at issue occurred within the foreign mission of the U.A.E. Defendants rely in part on 22 U.S.C. § 254b, which entitles nonparties to the Vienna Convention on Diplomatic Relations, such as the U.A.E., to the same privileges and immunities specified in the Vienna Convention on Diplomatic Relations. Defendants also invoke Article 43 of the Vienna Convention on Consular Relations, which states that "Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." Defendants stress that the principle of comity dictates that the government of the U.A.E. and the individual defendants not be subjected to American law. Furthermore, defendants state that they should not be subject to American law "especially when the law of the U.A.E. provides plaintiff with a forum in Abu Dhabi in which to address his suit." Defs.' Mot. To Dismiss Am. Compl. at 19.

The Court finds that while the U.A.E. may be afforded the same protections of the Vienna Convention on Diplomatic Relations as parties to that treaty are, defendants never indicate what protection they are requesting or for which defendants. Furthermore, as plaintiff notes in his opposition, Article 43 of the Vienna Convention on Consular Relations does not provide defendants any protection from suit because none of the defendants has been alleged to be a consular employee or officer.[9] In addition, although defendants do not elaborate on their contention that plaintiff has a forum for his suit under

---

**9.** "Consuls are in principle distinct in function and legal status from diplomatic agents. Though agents of the sending state for particular purposes, they are not accorded the type of immunity from the laws and enforcement jurisdiction of the receiving state enjoyed by diplomatic agents." Ian Brownlie, *Principles of Public International Law,* (4th ed.1990). *See* Gregory Dean Gisvold, Note, *Strangers in a Strange Land; Assessing the Fate of Foreign Nationals Arrested in the United States by State and Local Authorities,* 78 Minn. L.Rev. 771, 803 (1994) ("Consular authorities may differ from diplomatic authorities.... Where a

U.A.E. law, this does not appear to affect plaintiff's ability to bring suit under the FSIA. The FSIA allows foreign citizens to bring their disputes with foreign states in U.S. courts. *Verlinden B.V.*, 461 U.S. at 489–492, 103 S.Ct. 1962 ("Congress was aware of concern that our courts [might be] turned into small international courts of claims, ... open ... to all comers to litigate any dispute which any private party may have with a foreign state anywhere in the world .... If an action satisfies the substantive standards of the Act, it may be brought in federal court regardless of the citizenship of the plaintiff."). The Court therefore finds that the fact that defendants' actions occurred within a foreign

mission does not preclude the Government of the U.A.E. from being subject to this Court's jurisdiction.

## VI. *Head of State Immunity*

Defendants assert that the three individual defendants—Al-Suwaidi, Al-Khazragi, and Al–Nahyan—are entitled to head of state immunity. Because the Court dismisses these three individual defendants for lack of personal jurisdiction, the Court need not dispositively address this defense.[10]

## *Conclusion*

The Court concludes that subject matter jurisdiction over all of plaintiff's claims

State has not established a formal diplomatic mission, it will often choose to conduct diplomatic relations through consular posts."). Clearly, the U.A.E. and the Embassy are not consular employees or officers, and defendants have not alleged that the individual defendants—who are the Director of the State Audit Institution, the Director of Financial and Administrative Affairs, and the Minister of Higher Education and Scientific Research—are consular officials or employees.

**10.** If the Court had not dismissed the individual defendants, this defense would not afford them any protection. At common law, this absolute immunity was afforded to heads of state as a matter of grace and comity, not of right. *Flatow*, 999 F.Supp. at 22; *Lafontant v. Aristide*, 844 F.Supp. 128, 131–32 (E.D.N.Y. 1994). The FSIA does not explicitly provide immunity for heads of state. *See* Jerrold L. Mallory, Note, *Resolving the Confusion Over Head of State Immunity: The Defined Rights of Kings*, 86 Colum. L.Rev. 169, 173–75 (1986). Most courts that have addressed this question have allowed immunity to persons whom the United States government acknowledges as the official, sitting head of state; the judiciary must defer to the Executive Branch's recognition of heads of state. *Flatow*, 999 F.Supp. at 24; *Jungquist v. Nahyan*, 940 F.Supp. 312, 321 (D.D.C.1996), *rev'd on other grounds*, 115 F.3d 1020 (D.C.Cir.1997). In some cases, the Department of State will file a "suggestion of immunity" to indicate whether the United States Government considers the defendant a head of state. *See Lafontant*, 844 F.Supp. at 134–35; *Saltany v. Reagan*, 702 F.Supp. 319, 320 (D.D.C.1988). Some courts have suggested that absent a formal suggestion of immunity, a putative head of state should receive no immunity.

*See generally United States v. Noriega*, 117 F.3d 1206, 1211–12 (11th Cir.1997).

None of the defendants invoking the head of state immunity is alleged to be the sitting official head of state of the U.A.E. Nor has the State Department submitted a suggestion of immunity on their behalf or offered any guidance. Defendants' argument primarily asserts that as U.A.E. government officials, each of these defendants acts as an official representative of the President of the U.A.E., and therefore, they should be afforded head of state immunity. This argument, however, misconstrues the current form of the head of state immunity doctrine, which is limited only to the sitting official head of state. *See Flatow*, 999 F.Supp. at 24. The Court declines to expand the head of state immunity to cover all agents of the head of state. *See Republic of Philippines v. Marcos*, 665 F.Supp. 793, 797–98 (N.D.Cal.1987) (refusing to expand the head of state doctrine "to encompass all government officials of a foreign state to whom the State Department chooses to extend immunity. There is no precedent for such a radical departure from past custom ....") (internal citation omitted). The Court rejects defendants' claim to head of state immunity. *See First American Corp. v. Al–Nahyan*, 948 F.Supp. 1107 (D.D.C.1996) (denying head of state immunity to Minister of Defense of the U.A.E. and brother of current ruler of Dubai because he was not a sitting head of state of the U.A.E.); *Jungquist*, 940 F.Supp. at 321 (grandson of the ruler of Abu Dhabi who was the Chairman of the Crown Prince's Court was not entitled to head of state immunity because the Executive Branch had made no determination as to his status as a head of state of the U.A.E.).

exists pursuant to the commercial activity exception of the FSIA, that personal jurisdiction exists over two out of the five defendants, that the Act of State doctrine and the Head of State doctrine do not preclude the Court's review, and that the Court's review is not precluded because the acts occurred within a foreign mission. Accordingly, the Court grants in part defendants' motion to dismiss the amended complaint only to the extent that the Court lacks personal jurisdiction over defendants Al–Suwaidi, Al–Khazragi, and Al–Nahyan.