**Arlene HOLDEN, Plaintiff–Appellee,**

v.

**CANADIAN CONSULATE and Does 1–30, Defendants–Appellants.**

**No. 94–17130.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 1996.

Decided Aug. 9, 1996.

---

William J. Carroll, Heller, Ehrman, White & Mcauliffe, San Francisco, California, for the defendant-appellant.

Patrice L. Goldman, Rudy, Exelrod, Zieff & True, San Francisco, California, for the plaintiff-appellee.

Before: LEAVY, NELSON, and TASHIMA, Circuit Judges.

LEAVY, Circuit Judge:

Arlene Holden, a former commercial officer, sued the Canadian Consulate for wrongful termination alleging, among other claims, sex and age discrimination. The Consulate moved to dismiss Holden's complaint based on sovereign immunity under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602. The district court denied the motion finding that Holden's claims were based on a commercial activity, an exception to sovereign immunity under 28 U.S.C. § 1605(a)(2). The Consulate interlocutorily appeals the district court's order. We have jurisdiction under the collateral order doctrine. *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 779 (9th Cir.1991). We affirm.

## I. Background

In February 1993, the Canadian government closed its Consulate in San Francisco. As a result, the Consulate laid off numerous employees, including appellee Holden. Holden was a "Commercial Officer" within the Trade and Investment Section of the Canadian Consulate. She held the same position throughout her thirteen year tenure with the Consulate. Her job involved responding to inquiries from Canadian companies regarding information on prospective buyers, assistance in obtaining sales representation or wholesale distributors, provision of names or appointments with trade contacts and evaluations of the sales potential of a particular product. Holden also spent a significant amount of time at trade shows, promotions and seminars. Occasionally, Holden would respond to marketing inquiries from the Canadian government. She would simply relay information to the government, without any opinion or analysis.

In place of the Consulate, Canada opened a small satellite office staffed with only one commercial officer. A competition for that position was held between Holden and another commercial officer, Mark Ritchie. Ritchie, a man younger and less experienced than Holden, was selected for the job.

As a result, Holden filed a complaint in the Northern District of California against the Consulate alleging sex discrimination, age discrimination, violation of California public policy, breach of the implied contract to terminate only for cause and breach of the covenant of good faith and fair dealing. The Consulate moved to dismiss the complaint based on sovereign immunity granted by the FSIA. The district court denied the motion and this interlocutory appeal resulted.

## II. Discussion

■ The existence of subject matter jurisdiction under the FSIA is a question of law which this court reviews de novo. *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 706 (9th Cir.1992), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993).

■ The FSIA is the "sole basis" for obtaining jurisdiction over a foreign state and its agencies and instrumentalities. *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989). Under the FSIA, foreign states are presumed to be immune from the jurisdiction of United States courts unless one of the FSIA's exceptions applies. 28 U.S.C. § 1604. Under the "commercial activities" exception, a foreign state is not immune if the plaintiff's cause of action is based upon a commercial activity carried on by the foreign state. 28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular transaction or act." 28 U.S.C. § 1603(d). In determining the commercial character of an activity, the FSIA directs courts to examine the nature of the act or course of conduct, rather than the purpose. *Id.*

■ The Supreme Court has developed some additional guidelines. A foreign sovereign engages in commercial activity when it exercises "only those powers that can also be exercised by private citizens," versus those "powers peculiar to sovereigns." *Saudi Arabia v. Nelson,* 507 U.S. 349, 360, 113 S.Ct. 1471, 1479, 123 L.Ed.2d 47 (1993); *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992). The commercial activity exception applies only where the sovereign acts "in the market in the manner of a private player." *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166.

■ Further, it is not enough for the foreign state merely to have engaged in a commercial activity. Rather the statutory language requires that the plaintiff's cause of action be "based upon" the commercial activity in question. *Gates v. Victor Fine Foods,* 54 F.3d 1457, 1463 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 187, 133 L.Ed.2d 124 (1995). A plaintiff's claim is "based upon" those activities that are elements of the claim that would entitle the plaintiff to relief. *Saudi Arabia,* 507 U.S. at 356–57, 113 S.Ct. at 1477.

The Consulate contends Holden's suit is based on Canada's decision to close its Consulate which resulted in the loss of Holden's job. Such decision was clearly a sovereign

act. Holden, however, does not challenge the right of Canada to close its Consulate. Rather her suit is based on the fact that she was terminated and a younger man was not.

Given the FSIA's lack of a clear definition of "commercial activity," we turn to the statute's legislative history which provides a useful framework for analyzing the question. The FSIA's corresponding House Report states, "Also public or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the Foreign state in the United States." H. Rep. No. 94–1487, 94th Cong., 2d Sess. at 16, reprinted at 1976 U.S.Code Cong. & Ad. News 6604, 6615. The report further states, "Activities such as a government's ... employment or engagement of laborers, clerical staff or public relations or marketing agents ... would be among those included within the definition [of commercial activity]." *Id.*

■■■We adopt the standard suggested by the legislative history, that is, employment of diplomatic, civil service or military personnel is governmental and the employment of other personnel is commercial. Because private parties cannot hire diplomatic, civil service or military personnel, such hiring is necessarily governmental.

The Seventh Circuit has already adopted the analytical framework suggested by the House Report. *See Segni v. Commercial Office of Spain,* 835 F.2d 160, 165 (7th Cir. 1987). There, the Commercial Office in Spain hired Segni to "develop the marketing of Spanish wines in the midwest area of the United States." *Id.* at 162 (quotations omitted). After he was fired, Segni sued the Commercial Office for breach of contract. The court held that the commercial activity exception of the FSIA denied sovereign immunity to the Commercial Office. *Id.* at 165.

The court rejected the argument that the mere act of employing Segni was per se a commercial activity. *Id.* Instead, they examined the nature of Segni's employment activities to determine if Segni was a civil servant or a diplomatic officer. They found that he was neither. *Id.* The court relied on the fact that Segni had no role in the creation of government policy or its administration. "There is no indication in the record that he was so supervised or monitored by the Commercial Office, or so privy to its political deliberations, as to be considered a part of the Spanish government, as a civil servant or diplomat would be." *Id.* "The hiring of a marketing agent is certainly an activity ... in which a private person could engage." *Id.*

## A. Civil Servant

■■ The district court examined the nature of Holden's work to determine if she was a civil servant, and found that she was not. The district judge found that Holden did not compete for any examination prior to being hired, was not entitled to tenure, was not provided the same benefits as foreign service officers and did not receive any civil service protections from the Canadian government. We affirm the district court's finding that Holden was not a civil servant.

## B. Diplomatic Personnel

■■ We must next decide if Holden was part of the Consulate's diplomatic personnel.[1] The Consulate argues that unlike Segni, Holden was a full-time employee of the Canadian government who was closely monitored and supervised. It further contends that her job was to foster and promote trade and investment between the United States and Canada, in a wide variety of industries. In other words, she was assigned to promote trade solely for trade's sake, not for commercial gain as a private player would. It contends she was not merely a marketing agent and she never engaged in any actual sales.

---

1. The Consulate contends that because Holden was part of its "internal administrative staff," her employment was per se governmental. It relies on *Broadbent v. Organization of American States,* 628 F.2d 27 (D.C.Cir.1980) and its progeny for the proposition that employment of "internal administrative personnel" is never a com-

mercial activity under the FSIA. Its reliance is misplaced. *Broadbent* characterizes "internal administrative personnel" as civil servants. *Broadbent,* 628 F.2d at 33. Thus, even under *Broadbent,* we still must determine if the Consulate employed Holden as part of its civil service or diplomatic personnel.

Although Holden, unlike Segni, was a part of the Consulate's staff, her work was not that of a diplomat. As the district court found, Holden's activities were primarily promoting and marketing and she was not involved in any policy-making and was not privy to any governmental policy deliberations. She did not engage in any lobbying activity or legislative work for Canada, and she could not speak for the government. The Consulate concedes these points. Furthermore, as an American, she was not allowed in the Consulate unless in the company of a foreign service officer.

Her employment is more analogous to a marketing agent. Like Segni, who promoted all Spanish wine, not any particular brand, Holden promoted various Canadian products. *See Segni,* 835 F.2d at 161. Although the Consulate argues that the purpose of her work was to promote trade solely for trade's sake, and not for commercial gain, we examine the nature of the act, and not the purpose behind it. 28 U.S.C. § 1603(d); *Segni,* 835 F.2d at 164 (court ignored the fact that the purpose of Segni's work was to execute Spain's policy to increase exports). The nature of Holden's work, promotion of products, is regularly done by private persons. As such, her employment was a commercial activity, and thus the Consulate is not entitled to sovereign immunity under the FSIA.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's order denying the Canadian Consulate sovereign immunity because Holden's claims are based upon a commercial activity.