Robert ELLIOTT, Plaintiff,

v.

BRITISH TOURIST AUTHORITY, Department of Heritage, British Tourist Authority (New York), Defendants.

No. 96 Civ. 9154(HB).

United States District Court, S.D. New York.

Nov. 17, 1997.

Brian A. Mangines, Thomas E. Mangines, Mangines & Mangines, Fairfield, CT, for Plaintiff.

### OPINION AND ORDER

BAER, District Judge.[1]

Defendant, the British Tourist Authority ("BTA"), moves to dismiss plaintiff's complaint on the grounds that it is immune from the jurisdiction of the United States courts under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* For the reasons stated below, defendant's motion is DENIED.

### BACKGROUND

The BTA is a wholly-owned, funded and directed agency of the British Government chartered to promote tourism to the United Kingdom.[2] *See* BTA Ex. B. It provides

---

1. Ross Weiland, a third-year law student at New York Law School, assisted in the research and preparation of this opinion.

2. Defendant BTA asserts that plaintiff has named BTA (New York) and the Department of Heritage (correctly known as the Department of National Heritage) as additional defendants. Defendant alleges further that BTA's New York office is part of "BTA the Americas," the term used to describe BTA's offices in the United States, and that nei-

information to potential tourists, the U.S. media and the U.S. travel industry without charge. *See* Hamblin Aff. It does apparently charge British hotels and tour operators to be listed in its publications, although such charges are characterized as necessary to cover cost, and not as profit generating. BTA does not sell tours, transportation or lodging.

Plaintiff began working in the BTA's New York office in or around 1969 as a marketing executive. On or about March 1, 1996, plaintiff was terminated. His title prior to his termination was "Manager of Industry Relations." Plaintiff brings this action alleging that he was wrongfully terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as various state law claims.

## DISCUSSION

The present motion requires a two-step analysis. First, this Court must determine if the provisions of the ADEA apply to an agency or instrumentality of a foreign state that employs United States citizens on United States soil. Second, if the ADEA so applies, this court must determine if the BTA is immune under the FSIA.

### I. Applicability of the ADEA to a Foreign State

 Although neither party concluded it was worthy of comment, the ADEA provides in pertinent part: "The prohibitions of this section shall not apply where the employer is a foreign person [3] not controlled by an American employer." 29 U.S.C. § 623(h)(2). The provision appears to remove the BTA from ADEA's prohibitions. The few courts that have reviewed § 623(h)(2), however, are split as to its proper interpretation. *See EEOC v. Kloster Cruise Ltd.*, 888 F.Supp. 147, 149 (S.D.Fla.1995) (citing cases).

The court in *Kloster Cruise* held that the language in § 623(h)(2) was intended to apply only to *overseas operations* of a "foreign person" and not to the operations of a "foreign person" within the United States. *Kloster Cruise*, 888 F.Supp. at 149–52; *see also Helm v. South African Airways*, No. 84 Civ. 5404(MJL), 1987 WL 13195 (S.D.N.Y. June 25, 1987) (nothing in ADEA indicates that section was meant to exclude United States citizens working for a "foreign person" within the United States from ADEA coverage); *but see Mochelle v. J. Walter Inc.*, 823 F.Supp. 1302, 1309 (M.D.La.1993) (dicta stating that provision precludes application of ADEA to foreign employer within United States), *aff'd*, 15 F.3d 1079 (5th Cir.1994).

*Kloster Cruise* and *Helm* reached the same conclusion, i.e., that "nothing in the ADEA or its legislative history ... indicate[s] that the 1984 amendments [that added § 623(h)(2) ] were intended to exclude American citizens working within the United States [for a foreign employer] from coverage." *Helm*, 1987 WL 13195 at *7. Relying on the provision's legislative history, the court continued:

> The 1984 amendments to the ADEA were generally intended to extend the Act's coverage to Americans employed abroad by American companies or their subsidiaries. Congress was careful not to impose its labor standards on another country. Accordingly, Congress did not extend ADEA's protections to foreign nationals working abroad for American companies or their subsidiaries. It is inconceivable that Congress intended to respect the sovereignty of other nations and abandon that of the United States by subjecting American citizens, working inside the United States, to foreign law.

*Id.* (citations omitted).

In light of the above, and despite the fact that this question has not come before this

---

ther BTA's New York office or BTA the Americas are corporate bodies separate from the BTA. *See* BTA Br. at 1, n. 1. A review of the Complaint and the docket sheet indicates that only BTA has been named as a defendant (although plaintiff also included the Department of Heritage and BTA (New York) in the caption to his opposition papers). In any event, this motion relates only to defendant BTA.

**3.** "Person" is defined as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons." 29 U.S.C. § 630(a). As such, the BTA is a "foreign person" under the ADEA.

Circuit, I too find that § 623(h)(2) was added to limit the extension of the ADEA by the 1984 amendments, and not to carve out an exclusion from coverage for Americans working in the United States for foreign corporations. *Kloster Cruise*, 888 F.Supp. at 151. Put another way, 29 U.S.C. § 623(h)(2) does not exclude foreign employers who hire United States citizens to work within the United States from the prohibitions of the ADEA. *Cf. Shane v. Tokai Bank, Ltd.*, Nos. 96 Civ. 5187(HB), 96 Civ. 8351(HB), 1997 WL 639255 (S.D.N.Y. Oct. 15, 1997), at *6 (Treaty of Friendship, Commerce and Navigation does not exempt Japanese companies from American discrimination laws) (citing *Avigliano v. Sumitomo Shoji America, Inc.*, 638 F.2d 552, 554 (2d Cir.1981), *vacated on other grounds*, 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982)). When the BTA hires United States citizens to work in its New York office, therefore, it is subject to the prohibitions of the ADEA, to the extent permitted by the FSIA.

## II. The Foreign Sovereign Immunities Act

██ The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L.Ed.2d 818 (1989).[4] The Act states that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of [title 28]." 28 U.S.C. § 1604. "Foreign state" is defined to include "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An entity is deemed an "agency or instrumentality of a foreign state" if it:

> (1) ... is a separate legal person, corporate or otherwise, and (2) ... is an organ of a foreign state or political subdivision thereof, or a majority of [its] shares or other ownership interest is owned by a foreign state or political subdivision there-

of, and (3) ... is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

██ Such an "agency or instrumentality" will be immune from the jurisdiction of United States courts unless one of seven exceptions under the FSIA applies. 28 U.S.C. §§ 1604, 1605(a); *Drexel Burnham Lambert Group Inc. v. Committee of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir.1993). Once a defendant has made a prima facie showing that it is a "foreign state", the burden of showing that an exception applies shifts to the plaintiff. *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993).

### A. "Agency or Instrumentality"

██ The first question is whether the BTA is an "agency or instrumentality of a foreign state." Applying the three-part test of 28 U.S.C. § 1603(b), plaintiff argues that the BTA is not an agency or instrumentality of a foreign state because it fails to meet the third prong of section 1603(b). Plaintiff argues that under 28 U.S.C. § 1332(c), the BTA is a citizen of the State of New York subject to the jurisdiction of the federal courts. Section 1332(c) states in part: "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c). As noted above, the BTA (i) was established by the British Government Development of Tourism Act of 1969, (ii) is not incorporated in New York and (iii) its principle place of business is in London, England. Therefore, under the three-part test of § 1603(b), the BTA is an agency or instrumentality of a foreign state and is thereby presumed immune from the jurisdiction of United States courts.

---

4. The Complaint states that the Court's jurisdiction is appropriate pursuant to 28 U.S.C. § 1343(c), which grants the district courts jurisdiction over civil rights actions. The proper jurisdictional grant in this case is 28 U.S.C. § 1330, which provides jurisdiction over actions against

a "foreign state". The Court treats this as a "mere pleading error" and deems the complaint appropriately amended. *See Zveiter, infra*, 833 F.Supp. at 1092 (granting plaintiff leave to amend to correctly plead jurisdictional basis).

**B. Exceptions to Immunity Under the FSIA**

■ Plaintiff argues that four exceptions to the FSIA apply to overcome the BTA's presumed immunity. As the Court finds that plaintiff's action is subject to the commercial activity exception to the Act, it need not address plaintiff's other arguments. The "commercial activity" exception provides that sovereign immunity will not apply where "the action is based upon a commercial activity carried on in the United States by the foreign state...." 28 U.S.C. § 1605(a)(2). "Commercial activity" is defined as:

Either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d).

■ While this definition "leaves the critical term 'commercial' largely undefined," *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612, 112 S.Ct. 2160, 2165, 119 L.Ed.2d 394 (1992), it does instruct the Court to examine the nature, rather than the purpose, of the activity under scrutiny. *Segni v. Commercial Office of Spain*, 835 F.2d 160 (7th Cir.1987). That is, "the question is not whether the foreign government is acting with a profit motive...." Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce." *Republic of Argentina*, 504 U.S. at 614, 112 S.Ct. at 2166 (citations omitted) (emphasis in original). The key distinction the Act strives to make is between a state's governmental or sovereign activities (acts jure imperii) and its commercial activities (acts jure gestionis)—only the former are entitled to immunity. *Broadbent v. Organization of American States*, 628 F.2d 27, 31 (D.C.Cir.1980); *see also Segni*, 835 F.2d at 162 (describing evolution of sovereign immunity in United States).

The Act's legislative history is helpful in clarifying this distinction. The House Report discussing the Act discusses the commercial activity exception as follows:

Also public or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the foreign state in the United States.... Activities such as a foreign government's. employment or engagement of laborers, clerical staff or public relations or marketing agents ... would be among those included within the definition [of commercial activity].

H.R.Rep. No. 94–1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615.

As the legislative history makes clear, employment by a foreign state can be characterized as either commercial or governmental, depending on the nature of the employment. The hiring (and firing) of diplomatic staff and civil servants is an inherently governmental activity and therefore subject to immunity. *See Broadbent*, 628 F.2d at 34 (discussing distinction between employment of civil servants and others). On the other hand, the hiring (and firing) of American citizens or of clerical staff is commercial in nature and not subject to immunity.

An examination of the case law applying the FSIA to employment discrimination claims indicates that the BTA is not entitled to immunity in this case. In *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine*, 833 F.Supp. 1089 (S.D.N.Y.1993), Judge Sotomayor held that the defendant, a "foreign state," was not immune from a sexual harassment claim brought by a secretary who was a United States citizen employed by the defendant in the United States because the employment of a secretary is a "commercial activity" under the FSIA. The *Zveiter* court concluded that employment of the secretary was not "peculiarly sovereign in nature" and therefore constituted "commercial activity" for purposes of the Act. *Zveiter*, 833 F.Supp. at 1092–94.

The Seventh Circuit reached the same conclusion in a case involving a third-country national hired as a marketing agent for Spanish wines. *See Segni v. Commercial Office of Spain*, 835 F.2d 160 (7th Cir.1987).

The court first examined the nature of plaintiff's duties and concluded that they did not involve the creation of government policy or its administration and that plaintiff did not qualify as a civil servant or diplomat. *Id.* at 165. The court then found that his employment could be "best described as provid[ing] services in the area of product marketing." *Id.* Noting that "[t]he hiring of a marketing agent is certainly an activity . . . in which a private person could engage," the court concluded that immunity did not apply. *Id.* (quotation omitted); *See also Holden v. Canadian Consulate*, 92 F.3d 918, 922 (9th Cir. 1996) (hiring and firing of "Commercial Officer" primarily engaged in promoting and marketing constitutes commercial activity not subject to immunity).[5]

Application of the above analysis to the facts of this case leads to the conclusion that BTA is not entitled to sovereign immunity. Plaintiff is characterized as a marketing executive and his last job title was "Manager of Industry Relations." From this characterization and the nature of BTA's mission, the Court finds that plaintiff fits squarely within the holdings of *Segni* and *Holden*, namely that the "hiring of a marketing agent is certainly" a commercial activity. Furthermore, plaintiff is described as a resident of New York. While not specifically addressed, the Court assumes he is a United States citizen. His lack of British citizenship would place his employment beyond the scope of immunized "noncommercial" employment of civil servants. *See* H.R.Rep. No. 94–1487, at 16 (1976); *Broadbent*, 628 F.2d at 34 ("The Committee Reports establish an exception from the general rule [regarding civil servants] in the case of employment of American citizens or third country nationals by foreign states."); *see also Segni*, 835 F.2d at 165 n. 7.[6]

■ Finally, there must be "a significant nexus . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action." *NYSA–ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir.1993); *see Barkanic v. General Admin. of Civil Aviation*, 822 F.2d 11, 13 (2d Cir.1987). The "commercial activity" here is the employment by the BTA of plaintiff. There is clearly a significant nexus between the commercial activity of employment and plaintiff's claim of age discrimination. *Zveiter*, 833 F.Supp. at 1094 (allegations of sexual harassment are "necessarily 'based upon'" defendant's employment of plaintiff). Accordingly, the Court finds that the plaintiff has overcome the BTA's presumption of immunity under the commercial activity exception to the FSIA. 28 U.S.C. § 1605(a)(2).

## CONCLUSION

For the reasons stated above, the BTA's motion to dismiss plaintiff's complaint is DENIED. The case remains on the Court's January 1998 trial calendar.

## SO ORDERED.

---

5. The Court notes that the scope of the commercial activity exception to the FSIA is not necessarily coterminous with the commercial activity exception to the Vienna Convention on Diplomatic Relations, which provides diplomatic (as opposed to sovereign) immunity. See *Tabion v. Mufti*, 877 F.Supp. 285, 288–89 (E.D.Va.1995) (discussing differences and noting that "it is now clear that under the 'commercial activities' exception to the FSIA, a foreign state is not immune from suit for debts relating to . . . an employment contract such as the one at issue here").

6. Defendant's argument that plaintiff's termination was the result of a discretionary decision to cut BTA's New York staff and that this discretionary authority is cloaked with immunity is misplaced. Plaintiff's is not challenging the BTA's decision to cut its New York budget, but rather its decision to terminate his employment and, he alleges, hire a young female employee to assume his duties. See *Holden*, 92 F.3d at 920–21 ("Holden does not challenge the right of Canada to close its Consulate. Rather her suit is based on the fact that she was terminated and a younger man was not.").