FILED

JUL 02 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MOHAMED E. LASHEEN, | No. 10-17034 |
| Plaintiff - Appellee, | D.C. No. 2:01-cv-00227-LKK-EFB |
| EMBASSY OF THE ARAB REPUBLIC OF EGYPT; et al., | |
| Defendants - Appellants, | MEMORANDUM[*] |
| and | |
| THE LOOMIS COMPANY, | |
| Defendant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted December 1, 2011
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: THOMAS and CLIFTON, Circuit Judges, and CARR, Senior District Judge.**

The Arab Republic of Egypt, the Embassy of the Arab Republic of Egypt, and the Embassy of Egypt Cultural and Educational Bureau (collectively, the "Egyptian defendants") appeal the district court's determination that they are not immune from suit by Mohamed E. Lasheen ("Lasheen").[1] Lasheen sued the Egyptian defendants for violations of the Employees Retirement Income Security Act of 1974 ("ERISA") and breach of contract. The Egyptian defendants asserted sovereign immunity. Because Lasheen's claims are based upon the Egyptian defendants' commercial activity, we affirm. As the parties are familiar with the factual and legal history of the case, we need not recount it here.

I

Under the Foreign Sovereign Immunities Act ("FSIA"), "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in" the Act. 28 U.S.C. § 1604. Thus, "a foreign state is presumptively immune from the jurisdiction of United States courts[,] unless a

---

** The Honorable James G. Carr, Senior District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

[1] As in the previous Ninth Circuit opinion on this matter, "Lasheen" refers to both Mohamed Lasheen and his estate. *See Embassy of the Arab Republic of Egypt v. Lasheen* (*Lasheen I*), 603 F.3d 1166, 1168 n.1 (9th Cir. 2010).

specified exception applies." *Lasheen I*, 603 F.3d at 1169-70 (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). "Once the plaintiff offers evidence that a[] FSIA exception to immunity applies, the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply." *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1021 (9th Cir. 1987), *cert. denied*, 485 U.S. 905 (1988).

Here, Lasheen argues that two statutory exceptions apply to the Egyptian defendants: (1) waiver and (2) commercial activity. *See* 28 U.S.C. § 1605(a)(1)-(2). Because we affirm on the basis of the commercial activity exception, we need not reach the waiver exception.

Under the commercial activity exception, "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . ." 28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). It also explains that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* The Supreme Court has elaborated upon these

3

requirements. A foreign state engages in commercial activity when it exercises "only those powers that can also be exercised by private citizens," and not those "powers peculiar to sovereigns." *Nelson*, 507 U.S. at 360 (quotations omitted); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).

The key inquiry "is whether the [government's] particular actions . . . (whatever the motive behind them) are the *type* of actions by which a private party engages in . . . commerce." *Id.* (quotations omitted). Thus, this Court considers whether "the category of conduct is commercial in nature." *Lasheen I*, 603 F.3d at 1170 (quoting *Sun v. Taiwan*, 201 F.3d 1105, 1109 (9th Cir. 2000) (internal quotation marks omitted)). Finally, there must be "a sufficient nexus between the plaintiff's asserted cause of action and the foreign state's commercial activity." *Id*. This requires that the foreign state's activities form the basis of an element of the plaintiff's claim. *Nelson*, 507 U.S. at 357; *see also Holden v. Canadian Consulate*, 92 F.3d 918, 920 (9th Cir. 1996); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1463 (9th Cir. 1995).

In this case, Lasheen pled two causes of action that potentially form the basis of the commercial activity exception: ERISA violations, including breach of fiduciary duty, and breach of contract. As this Court explained in *Lasheen I*, "[b]y contracting with a company to manage a health benefits plan . . . the Egyptian

4

Defendants did not act with the powers peculiar to a sovereign, but instead acted as private players in the market." 603 F.3d at 1171. Similarly, by providing a health benefits plan to participants, the Egyptian defendants "did not act with the powers peculiar to a sovereign, but instead acted as private players in the market." *Id.* Regardless of their purpose, the nature of their activity was commercial. *See* 28 U.S.C. § 1603(d); *Sun*, 201 F.3d at 1108.

Moreover, this activity forms the basis of Lasheen's claims. In *Gates v. Victor Fine Foods*, a governmental Canadian pork processing company owned, through subsidiaries, a California plant. 54 F.3d at 1459. When the Canadian company withdrew financial support, the plant closed, and workers at the plant sued the Canadian company under various employment-related theories. *Id.* We observed that "[t]he record contain[ed] no evidence to suggest that [the Canadian company] was involved in [the California plant's] decision to cancel its Plan and to close its plant." *Id.* at 1465. Additionally, there was no "evidence that [the Canadian company] participated in any decisions concerning [the California plant] operations." *Id.* Because the commercial activities were unrelated to the claims at issue, we concluded that the commercial activity exception did not apply. *Id.*

In this case, by contrast, the record suggests that the Egyptian defendants were closely involved in the decision to deny Lasheen coverage. Lasheen

5

produced: the Agreement between Loomis and the Egyptian defendants, which specifies that the Egyptian defendants were the final decision-maker in coverage decisions; a letter from the Egyptian defendants to Loomis explaining the coverage decision on Lasheen's transplant; and internal Loomis correspondence showing the company's implementation of the Egyptian defendants' decision. Thus, there is substantial evidence that the Egyptian defendants were "involved in"–indeed, that they made–the decision regarding Lasheen's coverage, upon which his claims are based.

## II

The Egyptian defendants argue that, even if they were involved in commercial activity, the exception does not apply because Lasheen was a civil servant. *See Holden*, 92 F.3d at 921.

The civil-servant inquiry stems from the FSIA's legislative history, to which we turn for a framework by which to analyze commercial activity. *Holden*, 92 F.3d at 921. The House Report on the FSIA states: "Also public or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the Foreign state in the United States." H.R. Rep. No. 94-1487, at 11 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615. Thus, the report continues,

"[a]ctivities such as a foreign government's sale of a service or a product, . . . its employment or engagement of laborers, clerical staff or public relations or marketing agents . . . would be among those included within the definition [of commercial activity]." *Id.* Moreover, "courts . . . have a great deal of latitude in determining what is 'commercial activity' for purposes of th[e Act]." *Id.* True to the legislative history, we have employed a flexible approach in determining whether a person is a civil servant. *Holden*, 92 F.3d at 921.

Here, Lasheen was a professor at a public university in Egypt. He came to the United States on a student scholarship to study horticulture, in connection with his teaching in Egypt. Even assuming that Egypt's laws define university professors as civil servants, he was effectively on sabbatical while studying in the United States. As in *Holden*, he was not provided the same benefits or protections as a civil servant. *See Holden*, 92 F.3d at 921. The Egyptian defendants argue that he was entitled to student benefits, but this is not persuasive evidence of civil service. The *type* of activity in which Lasheen was involved–study at a university–was a type "of action[] by which a private party engages in trade and traffic or commerce." *Kato*, 360 F.3d at 114 (quotation marks omitted). Thus, Lasheen was not a civil servant.

III

Because Lasheen's claims arise out of the Egyptian defendants' commercial activity, the Egyptian defendants fall under a statutory exception of the FSIA and are not entitled to sovereign immunity.


**AFFIRMED.**