**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RASHA MOHAMMAD, and All Persons Similarly Situated, *Plaintiff-Appellee*, v. GENERAL CONSULATE OF THE STATE OF KUWAIT IN LOS ANGELES, AKA The General Consulate of the State of Kuwait, AKA The Nation of Kuwait, AKA The Royal Consulate of the State of Kuwait, The State of Kuwait, *Defendant-Appellant*. | No. 20-56255 D.C. No. 2:20-cv-02513-MWF-MAA OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Submitted January 10, 2022[*]
Pasadena, California

Filed March 17, 2022

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Johnnie B. Rawlinson and Consuelo M. Callahan, Circuit Judges, and Frederic Block,** District Judge.

Opinion by Judge Callahan

---

**SUMMARY***

---

### Foreign Sovereign Immunities Act

The panel affirmed the district court's order denying the motion of the State of Kuwait's Consulate in Los Angeles to dismiss an employment discrimination action based on sovereign immunity under the Foreign Sovereign Immunities Act.

The panel affirmed the district court's holding that the commercial activity exception to the FSIA applied.  The panel reaffirmed the holding of *Holden v. Canadian Consulate*, 92 F.3d 918 (9th Cir. 1996), that the "employment of diplomatic, civil service or military personnel is governmental," and clarified that the employment of other personnel is commercial unless the foreign state shows that the employee's duties included "powers peculiar to sovereigns."  The panel held that the district court properly exercised its discretion in finding that plaintiff, who was employed as an administrative assistant

---

** The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

*** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

by the Consulate, was not a civil servant and that her duties did not include "powers peculiar to sovereigns."

## COUNSEL

Nick S. Pujji and Carol Your, Dentons US LLP, Los Angeles, California, for Defendants-Appellants.

Richard L. Knickerbocker, Knickerbocker Law Firm, Santa Monica, California, for Plaintiff-Appellee.

## OPINION

CALLAHAN, Circuit Judge:

Rasha Mohammad ("Plaintiff") was employed as an administrative assistant by the State of Kuwait's Consulate in Los Angeles (the "Consulate"). She filed suit alleging that she had been constructively terminated due to discrimination based on her religion, gender, and national origin. She also alleged other violations of California's employment laws. The Consulate moved to dismiss the action based *inter alia* on sovereign immunity. The district court denied the motion, finding that it had jurisdiction under the commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*. The Consulate appeals, arguing that Plaintiff was part of its civil service and that her duties included "powers peculiar to sovereigns." *See Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (*quoting Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)). We affirm because the Consulate has not shown that the district court abused its discretion in finding that Plaintiff was not a civil servant and that her duties as an

employee who is not a diplomat, civil servant, or military officer, did not include "powers peculiar to sovereigns."

# I

Plaintiff was a Syrian national living in California as a legal permanent resident and is now a U.S. citizen. She is not, and has never been, a Kuwaiti national. In April 2014, Plaintiff entered into a written employment contract with the Consulate to work as a secretary. Plaintiff alleges that the Consulate created a hostile work environment by harassing, discriminating, and retaliating against her on the basis of her gender, religion, and Syrian national origin, violated various wage and hour laws, and breached her employment contract. She claims that as a result of this treatment she was forced to resign and was constructively terminated from her employment, effective September 1, 2017.

Plaintiff initiated this action by filing a complaint in the Los Angeles Superior Court in September 2018.[1]   The Consulate removed the action to the U.S. District Court for the Central District of California and then moved to dismiss the complaint on the ground that the Consulate was entitled to sovereign immunity under the FSIA. After briefing and oral argument, the district court denied the motion to dismiss in part and granted it in part.

---

[1] Plaintiff alleged twenty-three claims, including: (1) religious, gender, and national origin discrimination claims under California's Fair Employment and Housing Act; (2) harassment by employer and failure to prevent discrimination and harassment; (3) failure to pay required wages and vacation time; (4) breach of contract and the implied covenant of good faith and fair dealing; (5) unfair business practices; (6) violations of the Labor Code; (7) failure to give notice before cancellation of insurance coverage; and (8) improper disposition of property.

## II

As the district court recognized, the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Plaintiff asserted that the court had jurisdiction over her case pursuant to three exceptions to sovereign immunity in the FSIA: the commercial activity exception, the expropriation exception, and the tort exception. The district court found that the commercial activity exception applied and declined to address the application of the expropriation and tort exceptions.[2]

The FSIA's commercial activity exception states: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). Commercial activity:

> means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of

---

[2] Because we affirm the district court's determination that the commercial activity exception applies, we too do not address the application of the expropriation and tort exceptions.

> conduct or particular transaction or act, rather
> than by reference to its purpose.

28 U.S.C. § 1603(d).

Citing *OBB*, 577 U.S. at 33, 35, the district court held that it must first identify "the particular conduct on which the plaintiff's action is based": the "gravamen" of the action. It determined that the "gravamen" of Plaintiff's action was "the Consulate's treatment of [Plaintiff] as an employee during the course of her employment," as all of her claims were based upon "the Consulate's alleged failure to abide by laws regulating how employers must treat and compensate their employees."

The district court found our opinion in *Holden v. Canadian Consulate*, 92 F.3d 918 (9th Cir. 1996), instructive. Holden had been a "commercial officer" within the Canadian Consulate. *Id*. at 920. She sued the Canadian Consulate after her employment was terminated and she was replaced by a younger, less experienced man. *Id*. at 921. We adopted "the standard suggested by the legislative history, that is, employment of diplomatic, civil service or military personnel is governmental and the employment of other personnel is commercial." *Id*. We looked past Holden's job title and determined that she was not a civil servant because she "did not compete for any examination prior to being hired, was not entitled to tenure, was not provided the same benefits as foreign service officers and did not receive any civil service protections from the Canadian government." *Id*.

Applying *Holden*, the district court found that the nature of Plaintiff's work for the Consulate "was that of clerical staff, not civil servants or diplomatic personnel." It found that she was hired as a secretary whose job duties "included

general office clerical work like typing letters and reports dictated, approved, and signed by others, organizing files, archiving records, filing documents, answering the phones, and maintaining files." The court commented that Plaintiff also "helped assist others with translating things into Arabic or assisting Diplomats with writing and understanding the English language, but was not involved in policy-making or policy deliberations." In addition, Plaintiff "was not the personal secretary of any Diplomat and all confidential material and information was locked in a room which she never entered." The district court concluded that Plaintiff had "met her burden of production to show that the Consulate employed her to perform routine secretarial and administrative tasks, and thus, the commercial activity exception applies."

The district court held that the burden then shifted to the Consulate "to show, by a preponderance of the evidence, that [Plaintiff] performed uniquely governmental tasks." The district court reviewed the declaration and other materials submitted by the Secretary for the Consulate as well as the materials submitted by Plaintiff and concluded that the Consulate had failed to show that its employment of Plaintiff as a secretary was not commercial in nature. The district court observed that the Consulate had conflated the purpose of Plaintiff's work with the nature of her work and noted that the Secretary's declaration did not claim that Plaintiff "had discretionary job duties, was substantively involved in the making of policy or other governmental decisions, engaged in lobbying activity or legislative work, or had the authority to discuss substantive policy matters on behalf of the Kuwaiti government."

The district court denied the Consulate's request for further discovery. Quoting *Holden*, 92 F.3d at 922, the

district court commented that even if the court "were to resolve the factual disputes in [its] favor, the Consulate would still fall short of proving by a preponderance of the evidence that the nature of Plaintiff's work was not 'regularly done by private persons.'"

The Consulate filed a timely notice of appeal.

## III

"A district court's denial of immunity to a foreign sovereign is an appealable order under the collateral order doctrine." *Doe v. Holy See*, 557 F.3d 1066, 1074 (9th Cir. 2009) (per curiam); *Compania Mexicana de Aviacion, S.A. v. U.S. Dist. Court*, 859 F.2d 1354, 1356 (9th Cir. 1988) (per curiam) (same).

The existence of subject matter jurisdiction under the FSIA is a question of law, which is reviewed de novo. *Holden*, 92 F.3d at 920; *Park v. Shin*, 313 F.3d 1138, 1141 (9th Cir. 2002). However, credibility findings are generally reviewed for clear error, *see Papakosmos v. Papakosmos*, 483 F.3d 617, 623 (9th Cir. 2007), and evidentiary rulings are reviewed for an abuse of discretion, *see Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). We have further noted that on review of "a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 612 (9th Cir. 2020) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc)). A district court's factual finding will be affirmed "unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1263.

# IV

## A. Defining the commercial activity exception

The Supreme Court provided the contours of the commercial activity exception in *Weltover*, 504 U.S. 607, (holding that Argentina's issuance of bonds was a commercial activity), and *Saudi Arabia*, 507 U.S. 349 (holding that the Saudi government's wrongful arrest, imprisonment, and torture of plaintiff were sovereign not commercial activities). In *Saudi Arabia*, the Supreme Court read *Weltover* as holding:

> that a state engages in commercial activity under the restrictive theory where it exercises "'only those powers that can also be exercised by private citizens,'" as distinct from those "'powers peculiar to sovereigns.'" Put differently, a foreign state engages in commercial activity . . . only where it acts "in the manner of a private player within" the market. 504 U.S., at 614; *see* Restatement (Third) of the Foreign Relations Law of the United States § 451 (1987) ("Under international law, a state or state instrumentality is immune from the jurisdiction of the courts of another state, except with respect to claims arising out of activities of the kind that may be carried on by private persons").

507 U.S. at 360 (quoting *Weltover*, 504 U.S. at 614).

Three years after the Supreme Court's opinion in *Saudi Arabia*, we decided *Holden*. We recognized that the FSIA was the sole basis for obtaining jurisdiction over a foreign

state and that under the commercial activity exception, a country is not immune "if the plaintiff's cause of action is based upon a commercial activity carried on by the foreign state." *Holden*, 92 F.3d at 920.

We noted that the "the FSIA directs courts to examine the nature of the act or course of conduct, rather than the purpose." *Id*. We adopted the definition of commercial activity set forth in *Saudi Arabia*, 507 U.S. at 360, and added:

> it is not enough for the foreign state merely to have engaged in a commercial activity. Rather the statutory language requires that the plaintiff's cause of action be "based upon" the commercial activity in question. A plaintiff's claim is "based upon" those activities that are elements of the claim that would entitle the plaintiff to relief.

*Holden*, 92 F.3d at 920 (citations omitted).

Finding a lack of clear definition of "commercial activity" in the FSIA, we turned to the FSIA's legislative history. Based on a House of Representative's Report, we first noted that the employment of diplomatic, civil service, and military personnel is not commercial in nature. *Id*. at 921. Next, we quoted a section stating that "[a]ctivities such as a government's . . . employment or engagement of laborers, clerical staff or public relations or marketing agents . . . would be among those included within the definition [of commercial activity]." *Id*. (second alteration and omissions in original). We then adopted a standard suggested by the legislative history:

> employment of diplomatic, civil service or military personnel is governmental and the employment of other personnel is commercial. Because private parties cannot hire diplomatic, civil service or military personnel, such hiring is necessarily governmental.

*Id*.[3]

We found that although Holden "was a full-time employee of the Canadian government who was closely monitored and supervised," she was not a diplomat, "did not engage in any lobbying activity or legislative work for Canada, and . . . could not speak for the government." *Id*. at 921, 922. Although Canada argued that "the purpose of her work was to promote trade solely for trade's sake, and not for commercial gain, [we held that] we examine the nature of the act, and not the purpose behind it." *Id*. at 922. We concluded that because the "nature of Holden's work, promotion of products, is regularly done by private persons, . . . her employment was a commercial activity." *Id*.

Although, as noted by the Consulate, *Holden* has been interpreted by another circuit as creating a rigid rule, *see El-Hadad v. United Arab Emirates*, 496 F.3d 658, 664 n.2, (D.C. Cir. 2007) (opining that the Ninth Circuit "treats the civil servant question as effectively superseding the commercial/government distinction"), we read *Holden* as establishing a more general standard. For example, in *Park*,

---

[3] We cited approvingly the Seventh Circuit's assertion in *Segni v. Commercial Office of Spain*, 835 F.2d 160 (7th Cir. 1987), that the mere act of employing a person was not per se a commercial activity. *Holden*, 92 F.3d at 921.

we held that "an activity is commercial unless it is one that only a sovereign state could perform." 313 F.3d at 1145.

We reaffirm our ruling in *Holden* that the "employment of diplomatic, civil service or military personnel is governmental," 92 F.3d at 921, and clarify that the employment of other personnel is commercial unless the foreign state shows that the employee's duties included "powers peculiar to sovereigns." *Saudi Arabia*, 507 U.S. at 360 (quoting *Weltover*, 504 U.S. at 614).[4]

## B.  Application of the commercial activity exception

Whether Plaintiff was a "civil servant" or had duties that included "powers peculiar to sovereigns" appears to be a

---

[4] Other circuits substantially agree with this standard. *See El-Hadad*, 496 F.3d at 667 (holding that El–Hadad was not a civil servant and moving on "to the ultimate question of whether his work involved the exercise of 'powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereign.'") (quoting *Saudi Arabia*, 507 U.S. at 360); *Kato v. Ishihara*, 360 F.3d 106, 111 (2nd Cir. 2004) (holding that "to identify 'commercial activity' for purposes of the 'commercial activity' exception to immunity under the FSIA, we must ask whether 'the particular actions that the foreign state performs . . . are the *type* of actions by which a private party engages in trade and traffic or commerce'") (omission in original) (quoting *Weltover*, 504 U.S. at 614); *see also Merlini v. Canada*, 926 F.3d 21, 23 (1st Cir. 2019) (upholding jurisdiction under the FSIA's commercial exception over a claim by a clerical worker in the Canadian consulate in Boston who was injured when she tripped over a cord).

We note that in an unpublished disposition, *Eringer v. Principality of Monaco*, 533 F. App'x 703 (9th Cir. 2013), a panel of our court similarly rejected the argument that only diplomatic, civil service, and military personnel were governmental and all other personnel were commercial, and instead, interpreted the lists of laborers, clerical staff, public relations agents, and marketing agents in *Holden* and *Park* as exemplary rather than categorical. *Id*. at 704.

factual issue, at least insofar as the district court had to evaluate conflicting evidence and assertions. *See U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018) (noting that some mixed questions "immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence [and] make credibility judgments").

We consider whether an employee's activity is commercial in character by examining its nature, rather than the purpose of the activity. 28 U.S.C. § 1603(d); *Weltover*, 504 U.S. at 614 (quoting Black's Law Dictionary 270 (6th ed. 1990)) ("[T]he issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce'"); *Holden*, 92 F.3d at 922 ("[W]e examine the nature of the act, and not the purpose behind it.").

The district court reasonably rejected the Consulate's assertion that Plaintiff was a "civil servant." The Secretary's declaration claimed that Plaintiff was employed as "a Mission Secretary for the Consulate," but her employment application listed her job title as "administrative assistant." The Secretary's declaration asserted that Plaintiff was "provided civil service benefits similar to those received by Consulate diplomats such as access to health insurance." However, the district court determined that documents submitted by Plaintiff revealed that all Consulate employees receive health insurance except diplomatic personnel who *do not* have health insurance and "instead forward medical invoices directly to the State for payment." The Consulate has failed to show that the district court's determination that Plaintiff was not a "civil servant" is "illogical, implausible,

or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1263.

The Consulate contends that the district court should not have applied the factors set forth in *Holden* as relevant to determining whether Plaintiff was a civil servant but should instead have considered Kuwait's own definition of civil service. However, the Consulate has not supported its assertion with any evidence that Kuwait has a unique or different definition of civil service.

The Consulate further asserts that even if Plaintiff was not a "civil servant," her duties included "powers peculiar to sovereigns." It asserts that she: (1) was a highly qualified secretary directly responsible for coordinating, translating, and presenting high-level information that was both confidential and non-confidential; (2) attended some of the highest level meetings, often worked directly with the head of the mission, and communicated with certain authorities on behalf of the mission; and (3) was also involved in high level communications that involved the Kuwaiti government and typed and prepared reports for local authorities and for transmission to the Kuwaiti government through the diplomats. The Consulate cites Plaintiff's allegation that she was forced to participate in meetings or conversations in which Consulate officials were conspiring to defraud or deceive U.S. governmental agencies (which the Consulate denies) as plainly contradicting her assertion that she was never involved in any confidential communications. The Consulate further argues that the district court erred in not accepting that Plaintiff was an integral part of the mission's communication channel based on its lack of specificity because this put the Consulate in an impossible Catch-22 situation "where it would have to reveal sensitive, foreign government information that is traditionally protected by

immunity in order to sufficiently prove its entitlement to immunity."

The Consulate appears to conflate the nature and purpose of Plaintiff's duties and to confuse her prescribed duties with how the Consulate chose to utilize her skills.  It seems to argue that because Plaintiff was allowed to participate in certain confidential meetings and was asked to translate some confidential materials, she is similar to a diplomat or civil servant and the commercial activity exception does not apply.  But this misconstrues the test.

A person hired for a clerical position does not become a diplomat or civil servant because the sovereign choses to expose that person to confidential matters.  Rather the test remains whether the employee's claims arise "out of activities of the kind that may be carried on by private persons," *Saudi Arabia*, 507 U.S. at 360 (quoting Restatement (Third) of the Foreign Relations Law of the United States § 451 (1987)), or that are "regularly done by private persons," *Holden*, 92 F.3d at 922.  Here, Plaintiff's secretarial and translating duties are the type of activities that are usually performed by clerical staff.  On this record, the Consulate has failed to meet its burden of showing that the district court erred in finding that Plaintiff's claims fall within the commercial activity exception.

**V**

Finally, the Consulate asserts that we should remand for further discovery and evidentiary proceedings, in part because Plaintiff filed two *ex parte* applications after the filing of her reply brief.  "We review the district court's decision to limit the scope of jurisdictional discovery for abuse of discretion."  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).  The Consulate has not

shown that the limitation on discovery was an abuse of discretion.  It has not shown that it was precluded from presenting relevant evidence, has not suggested what evidence it would present on remand, and has not indicated how that evidence would alter the jurisdictional ruling.  We therefore deny the Consulate's request for a remand.

## VI

The FSIA provides that a foreign state is not granted immunity where an action "is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).  The Supreme Court has described commercial activity as "those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Saudi Arabia*, 507 U.S. at 360 (cleaned up).  We reaffirm our holding in *Holden* that the employment of diplomatic, civil service, and military personnel is entitled to immunity. *Holden*, 92 F.3d 921.  We clarify that the employment of other personnel can qualify for immunity if the duties of those employees include powers "peculiar to sovereigns." *Saudi Arabia*, 507 U.S. at 360 (quoting *Weltover*, 504 U.S. at 614).  Here, the district court determined that Plaintiff's clerical duties with the Consulate did not include such powers.  On the existing record, the Consulate has not shown that this determination "is illogical, implausible, or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1263.  Accordingly, the district court's denial of the Consulate's motion to dismiss for lack of jurisdiction is **AFFIRMED**.